## UNITED STATES v. PAGE et al.

(District Court, W. D. Virginia, at Lynchburg.   December 21, 1921.)

1. **Obstructing justice ⊙⇒11—Indictment for forcibly resisting officer must allege that accused knew that person assaulted was officer.**

   An indictment under Cr. Code, § 65 (Comp. St. § 10233), for forcibly assaulting and resisting an officer in the performance of his duty must allege that accused knew that the person assaulted was an officer.

2. **Obstructing justice ⊙⇒3—Statute protects officers only when making searches and seizures.**

   The provision of Cr. Code, § 65 (Comp. St. § 10233), making it an offense to use a dangerous weapon "in resisting any person authorized to make searches and seizures in the execution of his duty," is limited in its application to one resisting the performance of the duty of making lawful searches or seizures, either with or without a search warrant.

Criminal prosecution by the United States against J. M. Page and another.   On demurrer to indictment.   Demurrer sustained.

Thos. J. Muncy, U. S. Atty., of Roanoke, Va., C. E. Gentry, Asst. U. S. Atty., of Charlottesville, Va.

Wm. Kinckle Allen, of Amherst, Va., for defendants.

McDOWELL, District Judge.   The indictment in this case, which has been demurred to, reads as follows:

"The grand jurors of the United States elected, impaneled, sworn, and charged to inquire for the body of said Western district of Virginia, upon their oaths present:

"That heretofore, to wit, on the 16th day of October, 1920, in Amherst county, Va., in said Western district of Virginia, and within the jurisdiction of this court, J. M. Page and Grattan Massie unlawfully and feloniously did forcibly assault, resist, oppose, prevent, impede and interfere with certain officers of the United States, to wit, S. R. Brane supervising federal prohibition agent, R. H. Drummond, R. M. Coffey, H. B. Stebbins, C. M. Campbell, and H. B. Crenshaw federal prohibition agents, whose duty it was to enforce criminal laws, and who were then and there engaged in the enforcement of the National Prohibition Act, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States.

"Second Count.   And the grand jurors aforesaid, upon their oaths aforesaid, do further present:

"That at the time and place aforesaid, and within the jurisdiction of this court aforesaid, the said J. M. Page and Grattan Massie unlawfully and feloniously did use a deadly and dangerous weapon, to wit, a shotgun, in resisting certain persons, to wit, S. R. Brame, supervising federal prohibition agent, R. H. Drummond, R. M. Coffey, H. B. Stebbins, C. M. Campbell, and H. B. Crenshaw federal prohibition agents, said persons being then and there authorized to make searches and seizure in the execution of their duty, with the intent to commit bodily injury upon them, the said S. R. Brame, R. H. Drummond, R. M. Coffey, H. B. Stebbins, C. M. Campbell, and H. B. Cren-

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

shaw, prohibition agents, and to deter and prevent them from discharging their duty, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States.

"Vio. Section 28, Title 2,
National Prohibition Act.
and Sec. 65, Penal Code."

Section 65, Crim. Code (Comp. St. § 10233) reads:

"Whoever shall forcibly assault, resist, oppose, prevent, impede, or interfere with any officer of the customs or of the internal revenue, or his deputy, or any person assisting him in the execution of his duties, or any person authorized to make searches and seizures, in the execution of his duty, or shall rescue, attempt to rescue, or cause to be rescued, any property which has been seized by any person so authorized; or whoever before, at, or after such seizure, in order to prevent the seizure or securing of any goods, wares, or merchandise by any person so authorized, shall stave, break, throw overboard, destroy or remove the same, shall be fined not more than two thousand dollars or imprisoned not more than one year, or both; and whoever shall use any deadly or dangerous weapon in resisting any person authorized to make searches or seizures, in the execution of his duty, with intent to commit a bodily injury upon him or to deter or prevent him from discharging his duty, shall be imprisoned not more than ten years."

[1] Without considering any other question, the first count of the indictment seems to me to be fatally defective in that there is a failure to allege that the defendants knew that the persons assaulted were prohibition officers. Pettibone v. U. S., 148 U. S. 197, 205, 13 Sup. Ct. 542, 37 L. Ed. 419; U. S. v. Taylor (C. C.) 57 Fed. 391.

The second count of the indictment, which is founded on the last clause of section 65, requires some discussion, as this clause of the statute presents at least two questions of some difficulty.

The first question is whether or not the protection afforded by this section is confined to cases where the officer is executing a search warrant, and, if not, the second question is whether or not this clause is applicable only where the official duty being performed is that of making a search or a seizure.

1. Certain customs officers were by section 24, Act July 31, 1789 (1 Stat. 29, 43), authorized to search vessels without a search warrant. See, also, to the same effect, section 68, Act of March 2, 1799 (1 Stat. 627, 677, 678). By section 2, Act March 3, 1815 (3 Stat. 232), customs officers are authorized to search without warrant any vehicle and even packages carried by persons. The proviso to that section reads:

"Provided always, that the necessity of a search warrant, arising under this act, shall in no case be considered as applicable to any carriage, wagon, cart, sleigh, vessel, boat or other vehicle of whatever form or construction, employed as a medium of transportation or to packages on any animal or animals, or carried by man on foot."

See, also, sections 3059, 3061, 3064, 3066, Rev. Stats. (Comp. St. §§ 5761, 5763, 5767, 5769), which seem clearly to provide for searches and seizures without search warrants. And in this connection it may be said that it would be absurd to contend that customs officers must be armed with a search warrant in order to search the baggage of arriving passengers at ports of entry. Beyond doubt customs officials

are legally authorized and required to make many searches and seizures without search warrants.

Now as to internal revenue officers: Section 3276, R. S. (Comp. St. § 6016), gives a right to revenue officers to enter any distillery, without a search warrant, as of course, and, if entry be obstructed, to forcibly break into the building either at night or in the daytime. And this right of entry is given in order that certain searches and seizures may be made, also without search warrant. See, for instance, section 3453, R. S. (Comp. St. § 6355), requiring the seizure of certain articles. See, also, section 3177, R. S. (section 5900), giving revenue officers the right to enter, in the daytime, or at night if the premises be open, any building or place "where articles and objects subject to tax are made, produced or kept." Such right of entry does not, by rather clear implication, require a search warrant, at least in the case of tobacco or cigar factories, rectifiers' establishments, and such like places; and, such entry having lawfully been made by a revenue officer, it seems quite clear that he can and should (without a search warrant) in some instances make the search and seizure authorized by section 3453, R. S. Moreover, searches for, and seizures of, illicit distilleries in the open country (in thickets and woods) have been for many years and in innumerable instances made by revenue officers without search warrants; and I have never known of a contention that such searches and seizures are unreasonable or illegal. Again, for many years and in innumerable instances revenue officers made, without search warrants, searches and seizures of vehicles suspected of being used in removing untaxed liquor; and such acts were, prior to the Prohibition Act (41 Stat. 305), I believe, generally, if not universally, regarded as reasonable and legal.

It is therefore clear that customs officers and revenue officers were in many cases not only authorized, but required, to make searches and seizures without search warrants. If the execution of a search warrant is so obnoxious and so provocative of resistance as to require the protection of this very drastic clause of section 65, a fortiori is such protection needed when searches or seizures are authorized and required to be made without search warrants. The statute is not so phrased as to necessarily make it applicable only when officers are executing search warrants. And in view of the need for the protection of this statute when officers are making lawful searches or seizures without a search warrant, it seems reasonable to read the statute as applicable to both of these situations. As possibly indicating a different belief, see U. S. v. Hallowell (D. C.) 271 Fed. 795. But I can see no sufficient reason for thus narrowing this salutary statute, the protection of which is obviously more needed by officers when making lawful searches or seizures without a search warrant than when fortified by a search warrant. Officers authorized to make certain searches and seizures without search warrants are literally within this provision of the statute, and are, I think, clearly within its spirit and purpose. The evil intended to be remedied was the use of dangerous weapons in resisting officers in making searches and seizures. If the intent had been to limit the protection of this clause of the statute

to officers while executing search warrants, it would seem that such intent would have been expressed. If such intent had existed the words "in the execution of any search warrant" would most probably have been used, instead of the words "in the execution of his duty."

In the foregoing discussion I have had in mind only lawful searches and seizures.

[2] 2. Whether the words "in the execution of his duty" are to be read as applicable to any official duty, or are to be restricted to occasions when the officer is making a search or a seizure (with or without a search warrant), is also a debatable question.

The performance of the duties of customs and revenue (and prohibition) officers, other than making searches or seizures, rarely arouse such hostility and spirit of resistance as do searches or seizures. Hence it seems reasonable that this very drastic clause was intended to be applicable only when the officer is engaged in making searches or seizures. The statute is unclearly expressed in this respect, but obviously the intent could have been to confine the protection of the last clause to officers while engaged in making searches or seizures, and the collocation of the words suggests and is fairly indicative of such intent. If the intent had been to make this clause applicable when the officer is engaged in any official duty, it would seem that such intent would have been more clearly indicated. In the statute the words "in the execution of his duty" immediately follow the words "person authorized to make searches and seizures." Hence it seems reasonable to assume that the duty in the mind of the draftsman was the duty of making searches and seizures; and, if so, then the inhibition of this clause of the statute was intended to apply to the use of a dangerous weapon in resisting the performance of the duty of making searches and seizures, and not to resisting the performance of other official duties.

Again, if it had been the intent to make this clause of the statute apply to all instances of armed resistance to customs and revenue officers and their assistants, it was both very unnecessary and highly inappropriate to even make mention of searches or seizures. Had the intent been to afford the protection of this clause to customs and revenue officers in the performance of any and every duty, such intent would almost inevitably have been shown, not by referring to the persons intended to be protected as persons "authorized to make searches or seizures," but as any customs or revenue officer, or any person assisting him.

This case calls for no expression of opinion as to the exact limits of the protection afforded by the last clause of section 65. It may well be that the statute applies while an officer is on his way to make a search, or while he is returning from making a seizure and in possession of the fruits thereof. The indictment here contains no allegation that the officers were engaged in a duty even remotely connected with searches or seizures.

I think the demurrer to the last count is well taken, and I base this conclusion merely on the omission of any allegation that the officers were in any sense engaged in making a search or a seizure. I have

not given consideration to the possible necessity of alleging the validity of the search warrant, where the search or seizure was being made in execution of a search warrant, nor to the necessary allegations where search or seizure was being made without a search warrant.