## CULLEN v. ESOLA, U. S. Marshal, et al.

District Court, N. D. California, S. D. October 7, 1927.

### No. 1954.

1. Injunction ⬤�top128—State or federal officers will not be enjoined from instituting criminal proceedings, except on clear showing of right.

A court of equity will enjoin the officers of a state or the United States from instituting criminal proceedings in certain instances, but such jurisdiction is of limited scope and will not be exercised except upon clear showing of plaintiff's right.

2. Conspiracy ⬤�top23—Law making conspiracy to commit offense against United States a felony held valid (Criminal Code [18 USCA § 88]).

Criminal Code, § 37 (18 USCA § 88), providing that conspiracy to commit any offense against the United States constitutes a felony, *held* valid.

3. Conspiracy ⬤�top43(6)—Indictment for conspiracy to violate law forbidding interstate transportation of prize fight films charged offense against United States (Criminal Code [18 USCA § 88]; 18 USCA §§ 405–407).

An indictment for conspiracy to violate 18 USCA §§ 405–407, prohibiting the interstate transportation of films or other pictorial representations of prize fights, *held* to charge an offense against the United States within meaning of Criminal Code, § 37 (18 USCA § 88).

4. Injunction ⬤�top105(1)—Equity court, in proceeding to restrain arrest and seizing prize fight films, cannot determine evidentiary value of films or admissibility in criminal case (18 USCA §§ 405–407).

Court of equity, in a proceeding to restrain arrest and seizing certain motion picture prize fight films, has no jurisdiction to determine evidentiary value of films seized or their admissibility in evidence on trial of criminal charges under 18 USCA §§ 405–407; such matters being for a jury in a common law court.

5. Injunction ⬤�top105(1)—Theater operator may not restrain federal officers from making arrests and seizure of prize fight films (18 USCA §§ 405–407).

Theater operator *held* not entitled to restrain United States officials from making arrests and seizing motion pictures of prize fights under 18 USCA §§ 405–407, in so far as single arrest with accompanying seizure of films as evidence is concerned, in that to enjoin such arrest and seizure would be to determine guilt or innocence of crime in advance of trial and admissibility of evidence therein.

6. Injunction ⬤⟤105(1)—United States attorney will not be enjoined from repeatedly entering theater to seize prize fight films, copied within state after interstate transportation (18 USCA §§ 405–407).

United States attorney will not be enjoined from repeatedly entering premises of theater exhibiting prize fight films in alleged violation of 18 USCA §§ 405–407, though such films

were copied within state indirectly from that originally transported in interstate commerce.

**7. Injunction ⬦105(1)—Equity court will not determine effect of repeated seizures of evidence before criminal trial.**

It is not within province of an equity court to determine the effect of repeated seizures of evidence in advance of trial of criminal cause.

In Equity. Suit by William P. Cullen against Fred Esola, United States Marshal, and others. On motion to dismiss. Motion granted.

Williams, Kelly & McDonald, Milton Schmitt, and Joseph Connolly, all of San Francisco, Cal., for plaintiff.

Eugene D. Bennett, Asst. U. S. Atty., of San Francisco, Cal., and Albert E. Sheets, Asst. U. S. Atty., of Sacramento, Cal., for defendants.

KERRIGAN, District Judge. A complaint in equity has been filed by the conductor and operator of the Capitol Theatre in San Francisco, Cal., against the acting United States attorney and others, seeking to restrain them from making arrests and seizing certain motion picture films depicting the Tunney-Dempsey prize fight which took place in Chicago, Ill., on September 22, 1927. A motion to dismiss has been interposed by defendants.

The complaint alleges that the films in question were "made in California," that plaintiff had an irrevocable option to exhibit them in San Francisco, and that defendants are threatening to arrest plaintiff and his employees and take possession of any such films should plaintiff attempt to exhibit them in his theater. There are further allegations setting forth various elements of damage to plaintiff's property rights due to loss of business and profit, the expense of recovery of seized film and of defense, etc. The asserted right to restrain the United States attorney from proceeding to make any such arrest or seizure is contained in the allegation that:

"Your complainant is advised by counsel that the threatened seizure of this property * * * is in violation of his constitutional rights and beyond the powers vested in Congress, in that it attempts to exercise a police power within the state of California and beyond the powers conferred upon Congress by the Constitution of the United States."

In 1912 Congress enacted a statute entitled "An act to prohibit the importation and the interstate transportation of films or other pictorial representations of prize fights" (Act of July 31, 1912, c. 263, 37 Stat. 240 [U. S. Code Ann. tit. 18, §§ 405–407]). It is conceded by plaintiff that at some time subsequent to the Tunney-Dempsey fight a positive film portraying that fight was transported in interstate commerce, contrary to the provisions of this statute, from Illinois to California. A negative film was then made from this positive in Los Angeles, Cal., and this California-made negative was in its turn multiplied via various positives and negatives made within this state; the films which plaintiff desires to exhibit being two or three removes from the original, illegally transported film.

The act of Congress does not purport to forbid the exhibition of prize fight pictures within the individual states, nor does it cover the making of such pictures within the states. It covers only the transportation of such pictures in interstate commerce for purposes of public exhibition. There is no statute of the state of California forbidding the exhibition of such pictures. Plaintiff asserts that the arrests and seizures threatened by the United States attorney constitute an attempt to ingraft upon the act of Congress a ban upon the exhibition of prize fight pictures not included therein, which would have been unconstitutional had it been included, as interfering with the police power of the states. Upon this ground plaintiff seeks to enjoin the United States attorney from instituting criminal proceedings against him, arising out of his possession of and exhibiting of pictures of the Tunney-Dempsey fight.

[1] It is true that a court of equity will enjoin the officers of a state or of the United States from instituting criminal proceedings in certain instances. This jurisdiction is, however, of limited scope, and will not be exercised except upon a clear showing of plaintiff's right. The circumstances upon which such injunctions will issue are clearly set forth in Jacob Hoffman Brewing Co. v. McElligott (C. C. A.) 259 F. 525, 527:

"It is perfectly well settled that the United States may not be sued, except upon its own consent. Such consent it has given by various statutes which do not apply to the case under consideration. There is no difference between the states and the United States in respect to this immunity from suit. It is an attribute of every sovereign, recognized by all sovereigns. A criminal suit in the federal courts must be brought in the name of the United States, and can only be brought by the United States attorney. Confiscation Cases, 7 Wall. (U. S.) 454, 457, 19 L. Ed. 196. A suit in equity to enjoin the United States attorney from instituting

criminal proceedings under a statute of the United States is manifestly a suit against the United States. In such a case the United States is sued as effectively as if it were a defendant by name. There is, however, a well-recognized exception to the rule, viz. if property rights are invaded, and the statute in question is unconstitutional, it is void, is to be treated as nonexistent, and so no defense to the United States attorney. When instituting criminal proceedings under it he is to be regarded not as representing the United States in his official capacity, but as acting individually. So if, under a valid statute, he threatens to proceed in a manner injurious to complainant's property rights, and not authorized by the statute, he transcends his authority, does not represent the United States, is not protected by the statute, and may be enjoined. Irreparable injury alone is not enough. Both these conditions must exist. Obviously in such cases the constitutionality of the statute, or the question whether the United States attorney has transcended his authority, must be determined by the court before it can determine whether the particular suit is or is not against the United States."

The constitutionality of the statute forbidding the transportation of prize fight pictures in interstate commerce has been sustained by the United States Supreme Court. Weber v. Freed, 239 U. S. 225, 36 S. Ct. 131, 60 L. Ed. 308, Ann. Cas. 1916C, 317. The case before me therefore resolves itself into the question as to whether the complaint here shows that the United States attorney, acting under valid statutes of the United States, is exceeding his authority to the direct injury of plaintiff's property rights and in such manner that he is to be regarded as acting as an individual and not in his official capacity.

[2, 3] In answering this question it must be remembered that the United States attorney is not relying upon the statute forbidding the interstate transportation of prize fight pictures alone. Under section 37 of the Criminal Code (18 USCA § 88), conspiracy to commit any offense against the United States is a felony. This is also a valid statute. An indictment for conspiracy to violate the Prize Fight Film Act charges an offense against the United States. U. S. v. Johnston (D. C.) 232 F. 970.

[4] It is conceivable that facts coming to the attention of the United States attorney may cause him to believe that plaintiff is part of a conspiracy to violate the Prize Fight Film Act, and that the films in the posses-

sion of plaintiff for exhibition purposes are evidence of, and the instrumentalities by which, overt acts have been committed in furtherance of this conspiracy. The United States attorney may be mistaken in his belief that plaintiff is in fact part of such conspiracy. He may be in error in concluding that the plaintiff has committed a crime under the statutes above mentioned when such statutes are properly construed. It is possible that the subterfuge of repeated reproduction of these pictures within the state may affect the evidentiary value of the films seized as evidence, and that they would be found to be inadmissible in evidence on the trial of the criminal charges. These questions are not determinable by a court of equity in a proceeding such as the present one, but are matters to be tried in a common-law court before a jury.

In Harris & Co. v. O'Malley, 2 F.(2d) 810, the Circuit Court of this circuit has considered the right of a court to enjoin criminal proceedings where officers of the United States were prosecuting and enforcing forfeitures under an erroneous construction of a statute regulating the use of fish traps in the salmon fisheries of Alaska. In that case Judge Hunt says (at page 811):

"The argument that the statute, though valid, when properly construed and enforced, by reason of the alleged erroneous construction by the officials, will result in an invasion of the rights of the appellant corporation, is not sound. A similar situation arose in Arbuckle v. Blackburn, 113 F. 616, 51 C. C. A. 122, 65 L. R. A. 864, where the court had before it an application to restrain an official of Ohio from prosecuting the vendors for the sale of an article alleged to be in violation of the pure food laws of the state. A statute of Ohio provided against the adulteration of foods, and made it an offense to sell food which was adulterated, and effort was made to raise the question of the true construction of the act, and, if the court found that the complainant was right in its contention, the prayer was for injunction against the food commissioner from instituting criminal proceedings under the law of the state. Judge Day said: 'To entertain the bill in this aspect would be to subvert the administration of the criminal law, and deny the right of trial by jury, by substituting a court of equity to inquire into the commission of offenses where it would have no jurisdiction to punish the parties if found guilty. It would be the extension of equity jurisdiction to cases where prosecutions in state courts by the state officers are sought to be enjoined,

with a view to determining whether they shall be allowed to proceed under valid statutes in the courts of law. We think this an enlargement of the jurisdiction opposed to reason and authority.'

"Referring to the argument that the rule is different where property rights are involved, though the acts complained of constitute infraction of the law, it was said that that was quite a different proposition from enjoining criminal proceedings alleged to be indirectly destructive of property rights, and that a court of equity could not usurp the right of trial which both the state and the accused have in a common-law court before a jury. Jacob Hoffman Brewing Co. v. McElligott, 259 F. 525, 170 C. C. A. 487; Sullivan v. San Francisco Gas & Elec. Co., 148 Cal. 368, 83 P. 156, 3 L. R. A. (N. S.) 401, 7 Ann. Cas. 574. In the last case the court said it knew of no principle of jurisprudence which authorizes a court of equity, on the ground that it will prevent a multiplicity of actions, or an injurious interference with plaintiff's business, to proceed to investigate as to the truth of criminal charges that may be preferred against him, 'to determine, in advance of the decision of the lawfully constituted criminal courts, the question of his guilt or innocence of pending charges, his probable guilt or innocence of future charges, and, if found in his favor, to forestall the action of the law courts and enjoin the enforcement of a constitutional and valid law against him, on the sole ground that there is not, and never will be, sufficient evidence of his guilt.' 32 C. J. 285; 14 R. C. L. 426, 431."

[5] Under this case it seems clear that plaintiff is not entitled to the relief prayed for, certainly in so far as a single arrest of plaintiff, with accompanying seizure of films as evidence, is concerned. To hold otherwise is to determine plaintiff's guilt or innocence of crime in advance of a trial, and the admissibility of evidence at such trial. Such property damage as plaintiff suffers is the indirect result of the criminal charge and the seizure of films for use as evidence as in the case just cited.

[6] Plaintiff, however, insists that the United States attorney threatens to go further than this, and to enter his premises repeatedly to take further films, copied in California indirectly from the original transported here from Illinois, and that such acts are clearly beyond his authority and should be enjoined. I am unable to agree with this contention. [7] It is not within the province of an equity court to determine the effect of repeated seizures of evidence in advance of the trial of the criminal cause. These seizures may be made upon information leading the United States attorney to believe that a new conspiracy is in operation, or that the original one is still continuing. I do not say that the United States attorney will proceed under either of the theories suggested, in this case, but I do say that the statement that such theories might possibly apply to the present situation is enough to show plainly that plaintiff's argument involves the problem of his possible guilt or innocence of one or more crimes and the evidence admissible on this issue, and that an equity court cannot determine this issue, which must be left to the courts of law.

For the reasons above stated, the temporary restraining order is denied, and the motion to dismiss the complaint is granted.