UNITED STATES of America, Appellee,

v.

John Robert HECK, Jr., et al., Appellants.

Nos. 73–1671 to 73–1675 and 73–1697.

United States Court of Appeals, Ninth Circuit.

Jan. 30, 1974.

As Modified on Denial of Rehearings in Nos. 73–1671, 73–1672, 73–1675, 73–1697, June 5, 1974.

Morris Sankary (argued), San Diego, Cal., for appellants in 73–1671.

E. Mac Amos, Asst. U. S. Atty. (argued), Harry D. Steward, U. S. Atty., San Diego, Cal., for appellee.

Mobley M. Milam (argued), San Diego, Cal., for appellant in 73–1672.

Morris Sankary (argued), San Diego, Cal., for appellant in 73–1673.

Christopher R. Bates, pro per, for appellant in 73–1674.

Edward F. Ross, pro per, for appellant in 73–1675.

G. G. Baumen (argued), Los Angeles, Cal., for appellant in 73–1697.

Before BARNES and ELY, Circuit Judges, and PLUMMER, District Judge.*

* The Honorable Raymond B. Plummer, United States District Judge, Anchorage, Alaska sitting by designation.

BARNES, Circuit Judge:

One or more of the eleven defendants who are parties to this appeal were charged in one or more counts of a superseding indictment (No. 13708), with having conspired to violate (Count I), or having substantively violated (Count II), 26 U.S.C. § 7212(b).

All defendants were charged in Count III with having conspired (18 U.S.C. § 371) to forcibly assault, oppose, resist, impede, or interfere with various federal officials, or (Counts IV to X) with substantively violating 18 U.S.C. § 111.

We note the difference in the subject matter in section 7212(b) and section 111; and that a violation of section 7212(a) was not charged in the indictment.

26 U.S.C. § 7212(b) reads as follows:

"(b) Forcible rescue of seized property.—Any person who forcibly rescues or causes to be rescued any property after it shall have been seized under this title, or shall attempt or endeavor so to do, shall, excepting in cases otherwise provided for, for every such offense, be fined not more than $500, or not more than double the value of the property so rescued, whichever is the greater, or be imprisoned not more than 2 years."

18 U.S.C. § 111 reads as follows:

"Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.

"Whoever, in the commission of any such acts uses a deadly or dangerous weapon, shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

18 U.S.C. § 1114, referred to in section 111, lists United States Marshals, any officer or employee of the Federal Bureau of Information, or any officer, employee or agent of the Internal Revenue Service, as the officers protected by the statute.

The offense charged against all defendants in the first count of the superseding indictment filed in this case alleged a conspiracy "to forcibly rescue property seized at the Heck Transfer & Storage Co., which property had been heretofore previously seized by agents of the Internal Revenue Service," [1] though still located on the Heck premises. The second count charges all defendants forcibly attempted to rescue the seized property (26 U.S.C. § 7212(b)).

Counts III and IV to IX do not concern the seized property directly, but charge in Count III that all defendants conspired "to assault, resist and interfere" with certain Government agents responsible for protection of the seized property, and in Counts IV to X, inclusive, various defendants were charged with the substantive offense of assaulting, resisting or interfering forcibly with various special agents of the Internal Revenue Service, while said agents were engaged in the performance of their official duties.

The theory of the first two counts rests on an alleged rescue of seized property. They differ from the remaining counts which rest on interference with the agents' performing their official duties.

A variety of verdicts were returned by the jury,[2] and varying sentences were imposed.[3]

---

1. The court instructed the jury, after reading part of 26 U.S.C. § 7212(b):
   "The property seized in this case is only that described in Exhibits 13, 14 and 15."
   These documents are lists of auto trucks, tractors or vans, valued at $400.00, and office furnishings, valued at $91.00.

2. Defendant Eric C. Moths was found guilty on Count II and not guilty on Counts I, III, and VII. The defendant Christopher R. Bates was found guilty on Count II, and not guilty on Counts I and III.

3. See note 3 on page 783.

## I. *The Legality of the Seizure*

Certain of the defendants charge that the legality of the Internal Revenue Service seizure was an essential issue that was required to be determined by the trier of fact before the defendants could be found guilty. The court instructed the jury the legality of the seizure was not before it.[4]

Cooper v. United States, 299 F. 483 (3rd Cir. 1924) states the contrary:

"The offense denounced by the statute (26 U.S.C. § 7212(b)) has two essential ingredients—seizure of merchandise and rescue of merchandise seized. But there is more to it than that. There must be an unlawful rescue of merchandise lawfully seized. United States v. Page (D.C.) 277 F. 459. Hence, lawful seizure is not only an ingredient preliminary to an unlawful rescue but it is a prerequisite. And *lawfulness of the seizure must be shown.* This element of the offense cannot be pleaded by mere assertion or conclusion but *must be pleaded by facts.*"[5] (Emphasis added.)

Defendant Steven W. Mitzner was found guilty of Counts I, III and V, but not guilty on Count II.

Defendant James B. Mitzner was found guilty on Counts I, III, and VIII; not guilty on Count II.

Defendant Charles E. Mitzner was found guilty on Counts I, III, and IX, and not guilty on Count II.

Defendant Lucien B. Burnham was found guilty on Counts I, II, III, and IV.

Defendant Edward F. Ross was found guilty on Counts I and III and not guilty on Count II.

Defendant Dingwald was granted a severance of his trial by the trial court. Thus we need not consider herein Count X.

Defendant Hohenstein was found guilty but granted a new trial by the trial court.

3. The defendant Burnham was sentenced on Counts I to Count VI, a fine of $1,000, but imposition of sentence of imprisonment was suspended and the defendant placed on probation for a period of three years. His sentence on Count II was made concurrent with Count I with a fine of $500. His sentences on Counts II and IV were concurrent with each other and concurrent with I, and the court fixed the fine at $1,000.

The sentence of James B. Mitzner, found guilty on Counts I, III, and VIII was the same as defendant Burnham's, $250, all counts concurrent.

The sentence of Eric C. Moths, found guilty on Counts I and III was similar to defendant Burnham's with a fine of $1,000 concurrent as to each count.

The sentence of Charles E. Mitzner, who was found guilty of Counts I, III, and IV, was similar to Burnham's with a fine of $1,000 concurrent as to each count.

The sentence of Steven W. Mitzner, who was found guilty on Counts I, III, and V, was similar to that of defendant Burnham's all counts were concurrent with each other.

The defendant Christopher R. Bates was found guilty on Count II, fined $50; sentence of imprisonment suspended, and six months' probation granted without supervision.

The sentence of defendant Eric C. Moths, who was found guilty on Count II, was similar to that of defendant Bates.

The sentence of Armin Moths, who was found guilty on Counts I, II, III, and VI; was fined $1,000 on Count I; imposition of imprisonment was suspended and probation for three years was granted with a $500 fine on Count II, concurrent with Count I; and Counts III and VI concurrent with Count I and each other.

The defendant Heck was found guilty on Counts I, II, and III, and sentenced to a $1,000 fine, imposition of imprisonment was suspended, and three years' probation was granted. Count II was ordered concurrent with Count I with a fine of $500, and Count II was sentenced concurrent with Count I, with a fine of $1,000.

4. R.T., p. 1795, line 24, et seq.

5. Shepardizing the *Cooper* case is of some, but litle help. But one recent case is cited, United States v. Scolnick, 392 F.2d 320 (3rd Cir. 1968). The government refers to *Scolnick* as authority for the proposition that the validity of the government lien was irrelevant, as the district court instructed the jury. Quoting from *Scolnick* at page 326, the government suggests that their position finds support in this language:

". . . The necessary premise for defendant's assertions is that they are relevant factors in a trial where a defendant is charged with the criminal offense of rescuing property seized by the Service *under the circumstances herein stated.* . . . To permit such issues to be raised in connection with a prosecution under these statutes would be to encourage violent self help *where civil remedies are admittedly available.* . . ." (Emphasis added.)

We note the Government's Brief cites other authority to support its position that it need not plead and prove a lawful seizure; namely:

1. United States v. Oliver, 421 F. 2d 1034 (10th Cir. 1970). The jury passed on the defense the vehicle had not been properly seized, but found it had been. The instruction objected to by Oliver is not quoted in the decision. The *Oliver* panel preceded its reference to *Scolnick* by this language: "There is a dearth of cases discussing 26 U.S.C. § 7212(b), however, we find the reasoning hereinafter quoted to be relevant." [6]

2. United States v. Bernstein, 287 F.Supp. 84 (S.D.Florida, 1968). [7]

On such facts, the government, as here, relied on 26 U.S.C. § 6331 to authorize the seizure.

We need not pass upon this legal question, however, in view of our disposition of the first two counts, as hereinafter appears.

## II. *Evidence*

Turning to the facts of the case before us, we emphasize certain of them. The crime charged is alleged to have been committed on May 9, 1972. The federal tax lien was filed and recorded in San Diego County on March 23, 1972, covering the "1040 Tax Liability" of Mr. and Mrs. Heck for the two years ending December 31, 1968 and December 31, 1969. (Gov.Ex.No. 1). A levy in the amount of $8,336.73 was made on May 3, 1972 (Def.Ex. a), and Mr. Heck received copy of that levy (Gov.Ex. 5, para. 2), and a Notice of Seizure on May 4, 1972. (Gov.Ex. 13, 14, and 15). It was stipulated between counsel that the personal property was seized on May 9, 1972, and that the real property was seized on May 10, 1972 (R.T.1796).

---

But the circumstances stated in *Scolnick* are not the circumstances found herein. The headnotes in *Scolnick* state in part:

"6. Fact that evidence is illegally obtained exclusively by state officers does not automatically preclude its use in federal criminal trials."

"8. Federal officers are not required to comply with state statutes relating to searches of safety deposit boxes in order for evidence found therein to be admissible in federal prosecution."

"16. Once government has seized property belonging to defendant it has interest in such property so that defendant who takes such property from government's possession could be found guilty of rescuing property seized by the government."

6. "The relevant facts adduced in the record indicate Oliver owed prior transportation taxes on his truck for two separate years. After consultation with an I.R.S. agent, Oliver signed a tax report showing the tax due and transmitted it to the proper office. Payment did not accompany the tax return because Oliver was unemployed and without funds to transmit to the I.R.S. During several intervening months there were discussions between the I.R.S. and Oliver relative to the delinquency. It is agreed that Oliver disclosed and I.R.S. knew there were two vehicles unencumbered which could be levied upon for payment of the tax.

"On September 5, 1968, the I.R.S. levied on wages then due from Oliver's employer, searched for a bank account in Oliver's hometown, and seized one of the vehicles. The agents marked the seized vehicle with a seizure sticker and tags and hired a tow truck to tow the vehicle to a location where it would be impounded while notice and sale were accomplished.

"While the I.R.S. agents were in the process of towing the vehicle from Oliver's home to the place where it would be impounded, Oliver came upon them, stopped the tow truck, and rescued the vehicle. He returned the vehicle to his home, later moving it to a neighbor's lot for safekeeping."

United States v. Oliver, *supra*, at 1036.

7. "On December 14, 1967 a revenue agent went to the defendant's home to attempt to collect $1,990.83 in back taxes. The agent had a levy for four assessments. After discussion with the defendant and a refusal to pay, the agent attempted to execute the levy by seizing the defendant's two Cadillacs. The defendant physically interfered and prevented the seizure. The defendant was subsequently charged with violating 18 U.S.C. § 2232 which provides:

'Whoever, before, during, or after seizure of any property by any person authorized to make searches and seizures, in order to prevent the seizure of securing of any goods, wares or merchandise by such person, staves, breaks, throws overboard, destroys, or removes the same shall be * * *.' "

### III. *Sufficiency of Evidence*

A question quickly arises. How could the seized personal property be, on May 9, 1972, the object of an attempted rescue unless some defendant touched it, or picked it up, or attempted so to do? No one, save Mr. Heck, touched it, or attempted to touch it. The government cannot rely on Mr. Heck breaking the glass in his front door, because title to the real property was his subject to a lien, but prior to any seizure of it. He was entitled to break as many doors or windows as he desired prior to seizure. On May 9, 1972, Mr. Heck had ownership and use of the real property. (R.T. 243).

While there is a factual dispute between the parties as to "who pushed whom, if anyone," through the entrance door to the Heck premises, if there is no testimony of any attempt by any person, made inside or outside the building, to "rescue" anything seized, or to remove any personal property from the real property physically, the government's case has not been established.

The government, to supply this insufficiency, points to its Ex. 5, as proof of threats made by Mr. Heck, and his ultimatum, that if the government did not restore the property levied upon by the government to him—

" . . . my friends, as concerned and irate citizens will see that I am put back into business under my guaranteed Constitutional Rights." (Gov. Ex. 5).

The difficulty with the prosecutor's position is the testimony of Officer Williams that he did not read Ex. 5 (the letter), prior to the fracas on May 9, 1972.

There was evidence also of oral "threats"—such as Dr. Ross':

"[T]he property would be returned to Mr. Heck by 12 o'clock, or else" (R.T. 232), and "If you are prepared to arrest 200 people, you are welcome to try" (R.T. 233); "that California has no death penalty and that any action could be taken against police officers short of killing them in order to rescue seized property." (R.T. 235).

But there is no mention of threats, intimidation, obstruction, or impeding in section 7212(b), as there is in section 7212(a), and in 18 U.S.C. § 111.

We have before and again emphasize that the government saw fit to sue the defendants on two different theories, requiring differing proof. The first was expressed as a conspiracy to rescue seized property, and the substantive crime of forcibly attempting to rescue it. The second theory was expressed as a conspiracy to assault and interfere with government officials, and in doing so.

The only acts, violent or otherwise, directed against the Heck property, was defendant Heck's breaking of the glass in the door to his unseized real property on May 9, 1972; his sitting at his seized desk inside said premises; the bandaging of his cut fingers, and some brave talk of future action suggested by defendants outside the Heck premises. At the most, Heck (in Ex. 9) threatened that there might be an attempt to rescue seized property.[8]

The government emphasizes in its factual recital that defendant Ross was outside the Heck premises "walking up and down . . . reading out of a book entitled, *The Big Bluff*" (Ex. A–Z), making "comments about there being no death penalty in California, and that any action could be taken against police officers short of killing them." When Heck picked up the large rock (shown in defendants' Ex. R) to break the glass, he was surrounded by "a group" of three or four persons on each side of him, which group shouted, "Those SOB's cannot stop us now."

The difficulty in relying upon such testimony to prove Counts I or II is that they do not prove an attempt to rescue

---

8. The only overt act charged against defendants other than defendant Heck in Count I was that they "traveled" to the vicinity of 2165 Newton Avenue, San Diego, California.

the only seized property as of 12:00 noon on May 9, 1972; i. e., the personal property. There was evidence of certain intent to enter the locked Heck premises, and that some did, but that would not be sufficient to prove Counts I or II as to any defendant.

■ We have carefully examined the record, and conclude there is insufficient evidence to prove beyond a reasonable doubt that any defendant forcibly attempted to, or did, rescue seized property. We therefore reverse all convictions of the seven defendants convicted on Count I, and the five defendants convicted on Count II, upon the insufficiency of the evidence to establish a violation of 26 U.S.C. § 7212(b).

The second theory pursued by the government against the various defendants in Count III was that all nine conspired (18 U.S.C. § 371) to "forcibly assault, resist and interfere" with Internal Revenue officers responsible for the protection of seized (personal) property (18 U.S.C. § 111) located at the Heck Transfer & Storage Company property at 2165 Newton Avenue, San Diego, California.

Defendants Eric Moths and Christopher Raymond Bates were found not guilty by the jury of the conspiracy charged in Count III. Eric Moths was found not guilty of assault on Dunlap (Count VII); and neither Moths nor Bates were charged with any other substantive count charging a violation of 18 U.S.C. § 111, alone.

We need consider, therefore, only the convictions of defendant Heck as to Count III; of Armin Moths as to Counts III and VI; of Steven Mitzner as to Counts III and V; of James Mitzner as to Counts III and VIII; of Charles Mitzner as to Counts III and IX; and of Edward F. Ross as to Count III.

As to Count III, the government proved beyond question that various assaults took place on Internal Revenue officers, both on the sidewalk and street, and on the Heck premises. Five separate assaults were *charged* in Counts IV, V, VI, VII, VIII, and IX. The jury *found* a knowing assault, or resistance, or interference, was proved as to five of these six counts (*i. e.*, found Eric Moths not guilty on Count VII).

"It is well established that in determining the sufficiency of the evidence to sustain a conviction, the evidence must be construed in the light most favorable to the government. Glasser v. United States, 315 U.S. 60 [62 S.Ct. 457, 86 L.Ed. 680] (1942); United States v. Nelson, 419 F.2d 1237 (9th Cir. 1969); Kaplan v. United States, 329 F.2d 561 (9th Cir. 1964); United States v. Munns, 457 F.2d 271 (9th Cir. 1972)." (Appellee's Brief, p. 66).

Viewing the evidence most favorable to the prosecution, there is no question but that the evidence is sufficient to support each of five specific violations of the law as to Armin Moths, the three Mitzners, and Lucien B. Burnham. First there are various photographs showing assaults, interference and resistance. Next, three or more eye-witnesses testified to each assault charge. All the Mitzner defendants were observed to assault Agent Rodriquez by witnesses Wrenn (R.T. 431), Timothy Buster (R.T. 744), Robert Cotten (R.T. 521–554), and FBI Agent Maloney. The Burnham assault was observed by three agents, and the Moths' assault was observed by three agents.

Witness Wrenn was a photographer employed by the San Diego Union-Tribune newspaper, and had been for twenty-five years. He was disinterested, unprejudiced and was observant. He saw a "scuffle" between Agent Rodriquez and Dingwald, the man Rodriquez was trying to arrest. (R.T. 409). Wrenn testified he saw the three Mitzners "beating" at Agent Rodriquez (R.T. 430), and that he had taken a picture (Gov.Ex. 7) of them "pounding" at Rodriquez' back (R.T. 469, 432, 472) in the presence of defendant Ross. Rodriquez threw no blows. The police then arrived. (R.T. 431, 496).

The same witness, Wrenn, saw Armin Moths "throwing his arms around and kicking . . . pretty violent about it and lunging back and forth while being arrested and handcuffed." Wrenn saw no blows thrown by the officers (R.T. 432), nor did he see any officers initiate any "scuffles".

Wrenn also took defendants' Ex. AB (erroneously referred to as defendants' Ex. AC (R.T. 464), which shows Rodriquez putting the man in the yellow sweater (Dingwald) against an automobile, while he (Rodriquez) had hold of his arms from behind, and the crowd was trying to pull him (Rodriquez) away. (R.T. 465).

Wrenn heard the four or five men who were around Heck, when he approached the door, urge him to open the door. (R.T. 492). Among these men were Hohenstein and Charles and James Mitzner.

Cotten was a "waysman" in a shipyard. (R.T. 518). He was attending South Bay Trade School on May 9, 1972, located near the defendant Heck's place of business. He was apparently a disinterested witness. He saw a bearded man "attack" a federal agent as the latter attempted to make an arrest, and he identified the man as Steven Mitzner, and the agent as Rodriquez. Cotten saw Charles Mitzner "kneeing" Rodriquez, and James Mitzner holding Rodriquez down.

One Mitzner brother also struck an agent just after defendant Heck entered the premises. Cotten saw no agent strike any person. (Defendants' Ex. AS).

Buster was a student at South Bay Trade School on May 9, 1972. He saw Steven Mitzner strike a special agent on his left forehead; and heard Steven Mitzner curse the agent. Buster saw James Mitzner push and shove two special agents; and saw two more people (who were not arrested) strike agents or interfere with arrests (Defendants' Ex. BK).

The foregoing is not all the evidence in the record indicating that defendant Armin Moths "forcibly assaulted, resisted and interfered with" Meyers; that the three Mitzners did the same to Rodriquez, and that Burnham did the same to and with Dunlap. We have cited references only to disinterested testimony.

There is thus clearly sufficient testimony in the record, viewed most favorably to the government's position as we must, to establish the guilt on the five substantive counts against Armin Moths, Burnham, and the three Mitzners.

A conspiracy is defined as a combination of two or more persons to accomplish some unlawful purpose, or some lawful purpose by unlawful means. It is a partnership for criminal purposes in which each member becomes the agent for every other member (R.T. 1790), when the conspiracy has been proven to exist, and that the person charged was one of its members.

Under this definition, the evidence clearly enables a jury to find the required joint action between the five defendants substantively charged, and Dr. Ross and Mr. Heck. Thus a conspiracy stands proved on Count III.

We next consider the alleged errors charged, other than the sufficiency of the evidence to establish a conspiracy, and the five substantive counts. We follow the outline of the arguments contained in the government's brief, listing points III A to III R, inclusive.

There is no need, because of our conclusion with respect to Counts I and II to consider points III A, B, or C of the government's topical index, nor need we, in view of our conclusions as to the evidence, supra, consider further III R.

We find no necessity of answering in detail III D, that Congress has no power to delegate the collection of taxes. Appellants John R. Heck, Jr. and Eric W. Moths argue that Congress may not pass legislation delegating the power to lay and collect taxes because the Sixteenth

Amendment to the Constitution lacks an enabling clause. These appellants fail to realize that the collection power was vested in Congress prior to the passing of the Sixteenth Amendment.

■ Congress had the power to collect taxes on income prior to the passage of the Sixteenth Amendment and to make all laws necessary for carrying into execution this power under Article 1, Section 8, Clause 18 of the Constitution. *Cf.* Erwin v. Cranquist, 253 F.2d 26, 27 (9th Cir. 1958), cert. denied, 356 U.S. 960, 78 S.Ct. 997, 2 L.Ed.2d 1067 (1958).

### III E. *Constitutionality of Conspiracy Statute*

■ Title 18 U.S.C. § 371 (the conspiracy statute), has repeatedly been held constitutional. In United States v. Edwards, 458 F.2d 875, 883 n. 7 (5th Cir. 1972), the claim that such statute was unconstitutional was held "clearly without merit," and "unworthy of comment." "The section has been widely applied in the prosecution of frauds upon the revenue" since 1867. United States v. Gradwell, 243 U.S. 476, 481, 37 S.Ct. 407, 409, 61 L.Ed. 857 (1917). This "is a valid statute." Cullen v. Esola, 21 F.2d 877, 879 (1927).

### III F. *Opinions as to Constitutionality*

■ Appellant Heck had no right to express his opinion or belief that tax laws are unconstitutional in the courtroom as a witness during the trial of this case. Unless a defendant can qualify as an expert witness, no expression of opinion alone is admissible.

> "One may not disobey a law even in the good faith that it is unconstitutional and, on that ground, avoid the consequences of his act if the law is within the constitutional power of Congress."

> Warren v. United States, 177 F.2d 596, 600 (10th Cir. 1949), cert. de-

nied, 338 U.S. 947, 70 S.Ct. 485, 94 L.Ed. 584 (1950);

Finn v. United States, 219 F.2d 894 (9th Cir. 1955), cert. denied, 349 U.S. 906, 75 S.Ct. 583, 99 L.Ed. 1242;

Harris v. United States, 412 F.2d 384, 390 (9th Cir. 1969).

### III G. *Security Measures*

■ The trial court had the discretion to institute security measures on the last day of the trial, including the presence of United States Marshals and the use of an electric magnometer. The trial judge had (a) received veiled threats in the mail (R.T. 134 and 1779); and (b) information that a demonstration was planned for the courtroom. (R.T. 1609, 1770). Spectators had been previously admonished for their loud comments. (R.T. 279).

The trial judge did not abuse his discretion. United States v. Greenwell, 418 F.2d 846, 847 (4th Cir. 1969); Loux v. United States, 389 F.2d 911, 919 (9th Cir. 1968).

### III. H. *Failure to Record Grand Jury Testimony*

Appellants S. Mitzner, J. Mitzner, C. Mitzner, Burnham, and Ross and A. Moths argue that the failure to record grand jury testimony constitutes reversible error. They further contend that the presentation to the Grand Jury was based upon erroneous facts.

■■ Appellants made no timely motions before the court to have the grand jury proceedings recorded. Further, recording is permissive, not mandatory. F.R.Crim.P. Rule 6(d); United States v. Trenary, 473 F.2d 680 (9th Cir. 1973); United States v. Daras, 462 F.2d 1361 (9th Cir. 1972). In addition, appellants were afforded complete discovery and, as a result, were in no way prejudiced by the failure to record. Reyes v. United States, 417 F.2d 916 (9th Cir. 1969).

### III I. *Motions for Severance*

In Parker v. United States, 404 F.2d 1193, 1196 (9th Cir. 1968), this court stated:

"Joint trials of persons charged together with committing the same offense or with being accessory to its commission are the rule, rather than the exception. There is a substantial public interest in this procedure. It expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve upon juries, and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once. . . ."

Each defendant need not have participated in every act or transaction. This is evident from the express statement in the rule that all of the defendants need not be charged in every count. Mendez v. United States, 349 F.2d 650 (9th Cir. 1965), cert. denied. 384 U.S. 1015, 86 S.Ct. 1952, 16 L.Ed.2d 1036 (1966); Williamson v. United States, 310 F.2d 192 (9th Cir. 1962). Further, a joinder in one indictment of a conspiracy count and substantive counts is permissible under Rule 8(b). Baker v. United States, 393 F.2d 604, 607 (9th Cir. 1968).

All charges in this case arose out of the same series of transactions. The events culminating in the arrests sprang forth from the demonstration in front of the Heck property. All appellants were present at the demonstration.

### III J. *Was Appellant A. Moths Denied His Sixth Amendment Right of Confrontation By the Government's Failure to Call Agent Meyer?*

We adopt the government's answer *en toto* to this argument,[9] and find no prejudicial error.

### III K. *Hearsay Statements Are Admissible If Made By a Conspirator in Furtherance of The Conspiracy or are Admitted to Show State of Mind and Intent.*

Appellants Heck and E. Moths assert that various hearsay statements should have been excluded. These statements include: (1) the testimony of Agent Clovis setting forth appellant Ross' statement that " . . . if I could arrest 200 people I was welcome to try" (R.T. 876, ll. 9–11); (2) the testimony of witness Timothy Buster that he overheard appellants E. Moths and A. Moths discussing the fact that someone was going to bust in the door of the

---

9. "Appellant A. Moths was found guilty in Count Six of assaulting and interfering with Special Agent Robert Meyer. During the trial, Agents Dunlap (R.T. 974), Zarndt (R.T. 1045), and Graham (R.T. 1064) all testified that they observed A. Moths assault Agent Meyer. Agent Meyer did not testify. His testimony was originally scheduled for rebuttal, but when the defense testimony did not weaken the government's case, the decision was made not to call Agent Meyer. This would have only prolonged the two-week trial being held during the Christmas holiday season. No attempt was ever made by any appellant to subpoena Agent Meyer.

"The Confrontation Clause requires that an adequate opportunity for cross-examination exists. This may be satisfied even in the absence of physical confrontation. Douglas v. Alabama, 380 U.S. 415, 418 [85 S.Ct. 1074, 13 L.Ed.2d 934] (1964).

"A defendant has no right to confront a 'witness' who provides no evidence at trial. United States ex rel. Meadows v. New York, 426 F.2d 1176, 1184 (2d Cir. 1970); United States v. Russell, 282 F.Supp. 106, 112 (E.D.Pa.1968). Nor is the government required to call all of the witnesses to a crime. Rivera v. United States, 318 F.2d 606, 607 (9th Cir. 1963); United States v. Mosby, 422 F.2d 72, 74 (8th Cir. 1970).

"Appellant could have called Agent Meyer if he had desired to do so. His right of confrontation was satisfied by this available opportunity. There is no evidence to indicate that the failure of the government to call Meyer was induced by any improper motive. His testimony would have been cumulative and the government was not required to call him." (Government Brief, at 45 and 46).

Heck building (R.T. 738, ll. 8–12); (3) the testimony of Revenue Officer Williams that appellant Ross made statements about there being no death penalty in California and using force short of killing an officer to rescue seized property (R.T. 235); (4) the testimony of Agent Clovis that co-conspirator Hohenstein stated he was at the demonstration for the purpose of restoring the seized property by entering the premises (R.T. 880, l. 21–25; 881 l. 11–15) and (5) the testimony of FBI Agent Maloney that prior to the arrival of the agents of the FBI, the Internal Revenue Service told him they had made a seizure of the Heck company (R.T. 816–817). The *first four statements were made by co-conspirators.* Each was properly admitted as a statement in furtherance of the conspiracy. In addition, the statements of co-conspirator Ross about arresting 200 people and the statement of co-conspirator Hohenstein are admissible for the purpose of showing state of mind and intent. The fifth statement by Agent Maloney was not offered for the truth of the matter, but merely to show why the FBI went to the Heck premises.

▮ Hearsay statements made by a co-conspirator in furtherance of the conspiracy are admissible. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L. Ed. 429 (1892); Carbo v. United States, 314 F.2d 718, 735 (9th Cir. 1963). The appellants acknowledge that this is the law, but argue that the conspiracy must be established prior to the admission of the statements. However, it is within the trial judge's discretion to admit the declarations and acts of an alleged co-conspirator subject to later proof of the existence of the conspiracy. United States v. Castanon, 453 F.2d 932, 934 (9th Cir. 1972); Enriquez v. United States, 314 F.2d 703, 705 (9th Cir. 1963).

III L. *The Trial Judge Did Not Abuse His Discretion by*
*Failing to Ask All Of the Proposed Voir Dire Questions.*

▮ It is well established that the scope of the *voir dire* examination and the procedures to be utilized therein are matters within the sound discretion of the trial judge, and will not be disturbed on appeal unless the procedures used or the questions propounded are so unreasonable or devoid of the constitutional purpose as to constitute an abuse of that discretion. Haslam v. United States, 431 F.2d 362, 364 (9th Cir. 1970); Rodgers v. United States, 402 F.2d 830 (9th Cir. 1968); Amsler v. United States, 381 F.2d 37 (9th Cir. 1967).

We find no abuse of discretion.

III M. *The Trial Court is Not Required to Instruct That the Circumstantial Evidence Must be Adequate to Exclude Every Hypothesis Except That of Guilt.*

Appellant A. Moths urges this court to change its rule on circumstantial evidence and to adopt the California rule. This court has refused this invitation on past occasions. United States v. Rojas, 458 F.2d 1355, 1356 (9th Cir. 1972); Sablan v. People of Guam, 434 F.2d 837 (9th Cir. 1970).

▮ The proper test is not whether the evidence excludes every hypothesis except that of guilt but rather whether the trier of fact could reasonably arrive at its conclusion. United States v. Nelson, 419 F.2d 1237, 1243 (9th Cir. 1969).

III N. *The Jury Instructions Were Proper and Complete.*

▮ We have carefully considered the objections raised to the instructions requested, but not given, and we find the judge's instructions proper, adequate, and not erroneous, and that they sufficiently and thoroughly covered all issues when considered, as we are required to consider them, as a whole.

III O. *The Government did not Withhold Exculpatory Evidence.*

This alleged error had to do with the government's alleged failure to produce a photograph allegedly taken by IRS Agent Hairgrove, which allegedly shows an individual not identified as a defendant, striking Agent Rodriquez.

Appellants made no attempt to obtain this photograph at trial. Further, the photograph was among those shown to defense counsel at pretrial proceedings. While it was not specifically pointed out that this was an individual who hit Agent Rodriquez, additional individuals who hit Rodriquez, other than appellants, were described in the report made available to the appellants prior to trial. In addition, at the trial itself, Agent Clovis asked defense counsel if he desired the photograph in question, and was given a negative reply.

Counsel for defendants brought out the fact that others hit Agent Rodriquez and argued that there was an issue of mistaken identity regarding his clients. He repeatedly emphasized the picture taken by Hairgrove. (R.T. 1707–1709, 1714). The appellants were in no way prejudiced by not having the actual picture. As the government urges, they were convicted because of the overwhelming amount of eyewitness testimony regarding these assaults.

We consider appellants' alleged errors III P. and III Q. to be without merit. They approach the frivolous, particularly when no objections were made by any defendant to them at the trial.

## CONCLUSION

1. As to defendant Heck, we reverse his convictions on Counts I and II, and affirm his conviction on Count III.

2. As to defendant Armin Moths, we reverse his convictions on Counts I and II, and affirm his conviction on Counts III and VI.

3. As to defendant Eric Moths, we reverse his conviction on Count II.

4. As to defendant Bates, we reverse his conviction on Count II.

5. As to defendant Steven Wayne Mitzner, we reverse his conviction on Count I, and affirm his convictions on Counts II and V.

6. As to defendant James B. Mitzner, we reverse his conviction on Count I, and affirm his convictions on Counts III and VIII.

7. As to defendant Charles Edward Mitzner, we reverse his conviction on Count I, and affirm his convictions on Counts III and IX.

8. As to defendant Lucien B. Burnham, we reverse his convictions on Counts III and IV.

9. As to defendant Edward F. Ross, we reverse his conviction on Count I, and affirm his conviction on Count III.

Remanded for re-sentencing on affirmed convictions, and any other required proceedings, if any.

## OPINION ON PETITION FOR RE-HEARING AND TO MODIFY JUDGMENT

*First*, the various stays of mandate heretofore granted by this Court are severally vacated;

*Second*, the motion made by the Appellee-Government to correct this Court's opinion, filed January 30, 1974, is granted; and the following changes are made in said printed opinion:

(1) There is added to [page 9, line 16 of] the printed opinion filed, [499 F.2d pages 786, line 47, supra, after Count III a comma, and the words "and of Lucien B. Burnham as to Counts III and IV."

(2) The reference to "Count II", page 17, line 31, [499 F.2d page 791, line 49, supra,] is stricken, and "Count III" is inserted.

(3) After the word "Counts", on page 18, line 2, [499 F.2d pages 791, line 17, supra,] and before the words "III and IV" (same line and page), there are inserted the words "I and II, and affirm his conviction on Counts III and IV."

(4) Footnote 2, p. 3, line 19 [499 F.2d page 783, line 16, supra,] is stricken entirely, and inserted in its place is

792

"Counts I and III and V, but not guilty on Count II."

*Third,* we find no merit in the Petition for Rehearing filed on behalf of the three Mitzners and Burnham; and we deny it in every respect.

Mr. Bauman refuses to recognize that the indictment, in Counts III et seq., while referring to the I.R.S. Agents' and officers' "responsibility for the protection of seized property" charges only an assault under 18 U.S.C. § 111; and in Count III only, a conspiracy to assault in violation of 18 U.S.C. § 111.

▮ Further, the statute (§ 111) not only protects the person named in § 1114 of Title 18 who "engaged in the performance of his official duties," but also protects those assaulted "on account of the performance of his official duties." (18 U.S.C. § 111 and § 1114). Certainly each officer assaulted was so assaulted "on account of . . . his official duties."

▮ While the alternative "on account of" language of the statute was not included in Count III, et seq., the language used in indictment Counts IV to IX specifically followed the language of the statute, and sufficiently charge the acts complained of. They fully apprise defendants of the charges against them; and would prevent a second trial against them for the same acts, i. e., no double jeopardy could exist.

*See* United States v. Chunn, 347 F.2d 717, 720 (4th Cir. 1965) which quotes United States v. Behrman, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619 (1922) (and later Supreme Court cases in note 7), and further states that the allegation which describes the person assaulted "as having been engaged in the performance of his official duties" is surplusage.

"Thus, the indictment is sufficient without this phrase, and we consider such statement to be surplusage which may be ignored as a useless, innocuous averment. *See* Ford v. United States, 273 U.S. 593, 47 S.Ct. 531, 71 L.Ed. 793 (1927); Bary v. United States, 292 F.2d 53 (10th Cir. 1961); United States v. Vazquez, 319 F.2d 381 (3rd Cir. 1963)."

United States v. Chunn, *supra,* at 721.

We likewise classify as surplusage the government's allegation that the officers "were responsible for the protection of seized (personal) property."

▮ *Sub silentio,* our opinion inferentially ruled that 26 U.S.C. § 6331 was constitutional. We now specifically so hold.

"There is obviously an imperative public interest in favor of the prompt collection of delinquencies. But manifestly it cannot be validly considered an overriding policy in any particular situation unless Congress has so demonstrated its intention."

United States v. Sullivan, 333 F.2d 100, 119 (3rd Cir. 1974); Phillips v. Commissioner, 283 U.S. 589 at 595, 51 S.Ct. 608, 75 L.Ed. 1289 (1930).

"[T]axes are the life-blood of government, and their prompt and certain availability an imperious need. Time out of mind, therefore, the sovereign has resorted to more drastic means of collection."

Bull v. United States, 295 U.S. 247, 259–260, 55 S.Ct. 695, 79 L.Ed. 1421 (1935), quoted in Perez v. Ledesma, 401 U.S. 82, 127, note 17, 91 S.Ct. 674, 698, 27 L.Ed.2d 701 (1971).

"There are 'extraordinary situations' that justify postponing notice and opportunity for a hearing. Boddie v. Connecticut, 401 U.S. 371, at 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113. These situations, however, must be truly unusual. Only in a few limited situations has this Court allowed outright seizure without opportunity for a prior hearing. First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has

kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance. Thus, the Court has allowed summary seizure of property to collect the internal revenue of the United States, . . . "

> Fuentes v. Shevin, 407 U.S. 67, 90–92, 92 S.Ct. 1983, 1999, 32 L.Ed. 2d 556 (1972) citing Phillips v. Commissioner, *supra*, in note 24. *See* Mitchell v. Grant, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (decided May 13, 1974). (The *Fuentes* language quoted is not overruled or affected by the *Mitchell* case.)

In Sandnes' Sons, Inc. v. United States, 462 F.2d 1388, 1392, 199 Ct.Cl. 107 (1972), it was pointed out that in Fuentes v. Shevin, *supra*, "the Court expressly excludes revenue collection procedures from the scope of its decision."

Thus, no part of § 6331 has been declared unconstitutional, and none of the cases cited by Mr. Bauman, either in his original brief or in his Petition for Rehearing, convince us that we can ignore the *Phillips* case, for there is here the precise, rare and extraordinary situation "where some valid government interest is at stake" that permits the deprivation of a protected interest—i. e., a prior hearing, and "justifies postponing the hearing until after the event." Boddie v. Connecticut, 401 U.S. 371, 379, 91 S. Ct. 780, 786, 28 L.Ed.2d 113 (1971) cited in Board of Regents v. Roth, 408 U.S. 564, 570, note 7, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

■ *Fourth*, we find no merit in the Petition for Rehearing filed on behalf of defendant Heck, and we deny it. His petition cites only to his breaking his glass door with a rock. His written "demand" and oral statements were sufficient, however, to show he was a co-conspirator to cause a confrontation with, and if necessary, an assault on, the officers.

*Fifth*, we find no merit in the Petition for Rehearing filed on behalf of Armin R. Moths. It first relies on Mitzner's and Burnham's Petition, hereinbefore discussed. It also raises the question as to whether there was proof Moths knew *of the official capacity* of the person assaulted, i. e., he suggests no criminal intent existed. Much reliance was placed by Moths on United States v. Rybicki, 403 F.2d 599 (Sixth Circuit 1968). However, the facts in *Rybicki* were totally different than those here present, in that Rybicki was a veteran who had received injuries in the Korean War, has previously been "annually hospitalized for from three to four months," and was then "regularly prescribed a tranquilizer to slow me down a bit." The court reciting the above and more, then said, "The law *and the special facts of this case* persuade us to reverse." 403 F.2d at 604. (Emphasis added.)

■ We rely on United States v. Kartman, 417 F.2d 893, 894 (1969); McEwen v. United States, 390 F.2d 47 (9th Cir. 1968); and United States v. James, 464 F.2d 1228, 1230 (9th Cir. 1972); where all judges cited and relied upon the *McEwen* case, *supra* at 50, which rejected the earlier cases, and described the rationale of why "knowledge that such person is a federal officer" was not a necessary element of 18 U.S.C. § 111.

*See* cases listed in U.S.C.A. (18 U.S.C. § 111, note 5), and particularly United States v. Chunn, 347 F.2d 717 (4th Cir. 1965), and cases collected (note 13).

*Sixth*, we find no merit in the Petition for Rehearing filed by appellant Edward F. Ross, appearing *in pro per*. We deny it.

■ Mr. Ross attacks the rule of law that "in determining the sufficiency of the evidence to sustain a conviction, the evidence must be construed *by the appellate court* in the light most favorable to the government." Citing no cas-

es, he asserts that such a rule violates the United States Constitution. There is no such rule in the trial court, but scores of Supreme Court cases and hundreds of Courts of Appeal decisions have affirmed the rule here urged by the government, and followed, without deviation, by *all* Federal Appellate Courts. It is, as lawyers state, horn-book law.

*Seventh*, no Petition for Rehearing having been sought by defendant Bates, or Eric Moths, no action with respect to them is required.

All Petitions for Rehearing having been denied, and our opinion having been modified as set forth hereinabove, let the mandate issue forthwith.