**UNITED STATES of America,**
Appellee,

v.

**Sylvan SCOLNICK, Sidney Brooks, Kenneth Paull, a/k/a "Harold Fleishman", Allen Rosenberg, Sidney Brooks, Appellant.**

No. 16552.

United States Court of Appeals
Third Circuit.

Argued Oct. 16, 1967.

Decided Feb. 5, 1968.

Rehearing Denied March 11, 1968.
Certiorari Denied June 17, 1968.
See 88 S.Ct. 2283.

F. Emmett Fitzpatrick, Jr., Suckle & Fitzpatrick, Philadelphia, Pa., for appellant.

Robert St. Leger Goggin, Asst. U. S. Atty., Philadelphia, Pa. (Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before HASTIE, FREEDMAN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

The appellant ("defendant") appeals from his conviction by a jury for rescuing a safe deposit box seized by the Internal Revenue Service ("Service") in violation of 26 U.S.C. § 7212(b); larceny from a federally insured bank contrary to 18 U.S.C. § 2113(b); and conspiracy to commit the aforementioned acts (18 U.S.C. § 371). Three other individuals were indicted with the defendant, but only the defendant stood trial.

A complete summation of the bizarre events which culminated in defendant's conviction is necessary to understand the ultimate disposition of this appeal. They appear as part of the evidence introduced by the Government either at the hearing on the motion to suppress or at the trial.

Defendant was arrested by officers of the Philadelphia Police Department on the morning of April 13, 1965, while he was operating a motor vehicle. The arrest was made pursuant to a warrant charging him with a burglary of jewelry committed in January 1964. As a result of a search made as an incident to the arrest, a safe deposit box key was found among the keys on a key ring attached to the key inserted in the vehicle's ignition switch. One of the arresting officers seized the keys. The legality of this action is not challenged here.

The police ascertained that the safe deposit box to which the seized key belonged had been rented to one identifying himself as Howard Davis. The Davis rental application gave as the applicant's address what was later determined to be the residence address of defendant's brother. A warrant to search the safe deposit box was then sought by the Philadelphia Police. An affidavit dated April 13, 1965, purporting to fulfill the requirement of showing "probable cause," accompanied the petition for the warrant. It is not necessary at this point to delineate the petition's contents except to note that they indicated that the police reasonably believed that defendant might have placed the stolen jewelry in the box.

The search warrant was issued by the magistrate late in the afternoon of April 13, 1965. The following morning, pursuant to the directive of the warrant, the Philadelphia Police Department using the seized key and assisted by bank personnel using the bank's master key, opened the safe deposit box. The box was found to contain $100,000 in United States currency and other miscellaneous items. No jewelry was found.

Not finding the stolen jewelry, the police closed the safe deposit box without removing any of its contents. However, on the same day they notified the Service of the existence of the $100,000 cash in the box. Later that day the Service, through its agents, caused an assessment in the sum of $100,000 to be made against defendant. Thereafter on the same day a Notice of Termination of Tax Year as well as a demand for $100,000 in unpaid and due taxes (26 U.S.C. § 6851(a)) were served on defendant at the Philadelphia Detention Center. Defendant accepted the notice and demand and informed the agents that he would contact his attorney. Still later the same day the Service caused a Notice of Levy, Notice of Federal Tax Lien and Notice of Seizure pursuant to 26 U.S.C. § 6331 (a) to be served on the bank in which the box was located. A seal was placed upon the box warning anyone attempting to gain admission thereto that it was seized for federal income tax purposes. Subsequent to such seizure, the Philadelphia Police turned over to the Service the key to the box which it had taken at the time of defendant's arrest.

In order to prevent the Service from removing the contents of the box, the defendant secured from the Federal District Court a temporary injunction dated April 27, 1965, prohibiting the bank from turning over the box or its contents to the Service. On December 24, 1965, pursuant to a plan adopted by the defendants, another safe deposit box was rented in order to be able to gain admission to the vault containing the seized safe deposit box. On December 30, 1965, after being unsuccessful in previous attempts to secure the bank's master key, the conspirators decided that if a disturbance was created while one of the conspirators was inside the vault they might obtain the master key. They then put their plan into effect. The defendant, who was outside the bank, hurled a rock through the front window. In the confusion that followed the conspirator inside the vault seized the bank's master key. By using it in conjunction

with a duplicate key which defendant had retained and provided him, he carried from the bank the entire safe deposit box which had been seized by the Service. Later that evening defendant and the other conspirators divided the money and disposed of the box. Testimony revealed that defendant received $80,000.

After indictment but prior to the trial defendant moved to suppress evidence concerning the search of the safe deposit box and its contents on the ground that the search of the safe deposit box by the Philadelphia Police was without probable cause and therefore in violation of his constitutional rights, or in the alternative, that the search was in violation of a Pennsylvania statute hereinafter discussed. The district court denied the motion.

Thereafter the defendant stood trial. Evidence was offered by the Government as to the contents of the box through state agents, bank personnel and the defendant's alleged co-conspirators. Defendant's counsel objected to the introduction of the evidence for the same reasons given in support of his motion to suppress. His objections were overruled. The defendant was convicted and it is not disputed that defendant's counsel properly preserved his objections for appeal purposes.

Defendant's primary contention is that the search conducted by the Philadelphia Police Department of the safe deposit box was without probable cause or, in the alternative, constituted a violation of a Pennsylvania statute dealing specifically with searches of safe deposit boxes. In consequence, he says that any testimony regarding the seizure of the box and its contents was inadmissible in this federal criminal proceeding because of the provisions of the Fourth Amendment.

■■■ The decision in Elkins v. United States, 364 U.S. 206, 80 S.Ct.

1437, 4 L.Ed.2d 1669 (1960), interred the "silver platter" doctrine. Thus, evidence used in a federal criminal trial, even though obtained originally by state authorities, must be judged by the requirements of the Fourth Amendment.[1] The admissibility of evidence obtained by a search by state officers and thereafter sought to be used in a federal trial is to be judged as though the search had been made by federal officers. If the evidence obtained by the state officers would have been inadmissible in a federal trial had it been obtained by federal officers because of a violation of the Fourth Amendment, it is no less objectionable because it was obtained by state officers. Elkins, supra; and see Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914).

With these principles in mind we consider defendant's contention that the search warrant in question was issued without probable cause when tested by federal requirements. We must consider this issue because testimony, to which defendant's counsel objected, was offered by the Government based on knowledge obtained as a result of the allegedly illegal search.

■■■ We turn to the affidavit which accompanied the request for the warrant. In evaluating it, for present purposes, we realize that its content must be tested and interpreted in a common sense and realistic fashion. Being drafted normally by non-lawyers in the haste of a criminal investigation, such affidavits need not contain the elaborate specificity once required under common law pleading. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). The "probable cause" required for the issuance of a search warrant, as the very term implies, involves probabilities. Probable cause exists where "the facts and circumstances within [the offi-

---

1. The Fourth Amendment to the Federal Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

cers] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" a search should be conducted. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925).

■ With these standards in mind we examine the present affidavit. It was executed by Philadelphia Detective Snyder ("affiant") one of the officers who arrested defendant. It recited that an informant, who was identified in the affidavit, stated to him under oath that he and defendant burglarized an apartment and took about $16,000 worth of jewelry; that the informant further stated that defendant retained all of the jewelry. By independent investigation the Police determined that jewelry was stolen from the identified apartment on the date given by the informant. The affidavit recited that the informant supplied the Philadelphia Police Department with reliable information in the month previous to the month when the affidavit was executed. The affidavit further recited that defendant was arrested pursuant to a warrant issued on the basis of his participation in the burglary by affiant and another officer and that they took from him a key for a safe deposit box. Affiant further recited that during his ten years as a detective he has known burglars to use such boxes to store stolen jewelry while waiting to dispose of it. He then stated as follows:

"It is my belief that because of these facts and information, and my experience as a Police Detective, that all or part of the stolen jewelry is in Brooks' home or a safe deposit box."

The affiant further stated that an investigation subsequent to the seizure of the key revealed that the address given by the person who rented the safe deposit box was the address of defendant's brother, and that no one by the name given in the application resided at the address given. The affidavit recited that the affiant believed that the person who rented the safe deposit box was the defendant.

The magistrate was clearly informed in the affidavit itself of the underlying circumstances supporting affiant's conclusions. Thus, affiant gave facts to substantiate his belief as to the creditability of the informant's statement to him that defendant had taken the jewelry; that he probably rented the safe deposit box and that he might well be using the safe deposit box to store the stolen jewelry. A fair reading of the whole affidavit reveals that its conclusions are based upon information possessed by the police at the time. The district court found, and we agree, that the affidavit met the Fourth Amendment requirement of probable cause. See United States v. Ventresca, supra.

Defendant's second argument, as we understand it, is that even if we should find that the affidavit evidenced probable cause, the search warrant was nevertheless illegal because it was issued in violation of Pennsylvania statutory law. (Act of September 20, 1961, P.L. 1532 No. 651, sec. 1, 19 P.S. § 591).[2]

2. "Except as herein provided, during any criminal investigation or criminal proceeding when a petition is filed with any court for an order to open a safe deposit box, whether such petition is filed by a police official or any other person, the court shall not issue any such order until at least forty-eight hours after notice of the filing of such petition and a certified copy of said petition has been served upon the holder or holders of the safe deposit box. The petition shall set forth the date and time and place when the holder or holders of said safe deposit box may have an opportunity to appear in court for the purpose of answering the petition to show cause why the safe deposit box should not be opened. If the person filing such petition shall, by affidavit, advise the court that the holder or holders of said safe deposit box can not be located, then the court may issue such order for the opening of said safe deposit box without the notice required by this act. The court shall have the power to order the said safe deposit box sealed pending the disposition of the petition and to enjoin the holder or holders

The Government concedes that the Philadelphia Police did not comply with the Pennsylvania Act. However, it argues that the statute did not vitiate the search. We shall assume that, as a matter of Pennsylvania law, the statute was applicable to the request for the search warrant here involved. We shall further assume that the warrant was illegal as a matter of Pennsylvania law. We make the assumptions because the nature of the assumed violations of Pennsylvania law are such that they are not cognizable in a federal criminal proceeding. We base our conclusion on the application of the teaching of Elkins v. United States, supra, to our facts. In that case the United States Supreme Court, exercising its supervisory power over the administration of criminal justice in the federal courts, announced the standard to be used in determining whether evidence secured in a state conducted search may be used in a federal criminal trial. Mr. Justice Stewart stated:

"For these reasons we hold that evidence obtained by state officers during a search which, if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures under the Fourth Amendment is inadmissible over the defendant's timely objection in a federal criminal trial. In determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out. *The test is one of federal law,* neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed." 364 U.S. at 223–224, 80 S.Ct. at 1447. (emphasis supplied).

The exact problem facing this court as a consequence of the Elkins rule was

observed by Mr. Justice Frankfurter in his dissent in Elkins when he said:

"Under the rule the Court today announces, the federal trial court, whenever state-seized evidence is challenged, must decide the wholly hypothetical question whether that evidence was 'obtained by state officers during a search which, if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures under the Fourth Amendment.' *Irrelevant are violations of state law,* or hypothetical violations of federal statutes, had the search been 'conducted by federal officers.'" (emphasis supplied). 364 U.S. at 243–244, 80 S.Ct. at 1459.

The rule of the majority in Elkins was applied in Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960) and has been quoted with apparent approval by a unanimous court in Preston v. United States, 376 U.S. 364, 366, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

■ These Supreme Court cases show that the fact that evidence is illegally obtained exclusively by state officers does not automatically preclude its use in federal criminal trials. This is made abundantly clear from the facts in Rios v. United States, above. There the state court had found the evidence to have been illegally obtained as a matter of state law. However, the Supreme Court did not decide that it was thereby rendered inadmissible in the federal trial. Rather, it remanded the case for an evaluation of the evidence by Fourth Amendment standards. Had the Supreme Court felt that an established illegality under state law was sufficient to preclude its use in the federal courts there would have been no need to remand for a hearing.

Given the violation of Pennsylvania law here, the federal court was required to make an independent determination as to whether the search conducted by the state officers would have violated the

of said safe deposit box from opening or permitting the opening of the box except as directed by the court. This act

is hereby declared to be procedural and it is not intended to affect the substantive rights of holders of safe deposit boxes."

**326**

Fourth Amendment had it been conducted by federal officers. The federal constitutional requirement is that the warrant must have been issued on "probable cause."

■ We are satisfied, as was the district court, that, tested by federal standards, the warrant was issued on probable cause. The Pennsylvania statute did not relate to any aspect of probable cause. As its legislative history [3] indicates, it was enacted so that a safe deposit box holder would know that his box was to be opened. It was, as the Act indicates, purely an added state procedural provision.[4]

Defendant next argues that the district court erred in failing properly to instruct the jury regarding the criminal charge involving the rescue of seized property. He claims that the Government failed to establish the following: that the Service terminated defendant's taxable year as of April 14, 1965; that the tax owed by defendant for the period was $100,000; that the Service determined that payment of the tax was in jeopardy as is required to allow them immediately to lien a taxpayer's property; that a lien was placed on defendant's assets; and that a levy was placed on the safe deposit box and the property seized by bringing it into the possession of the Service. Apparently, alternatively, he claims that the jury should have been instructed as to the Government's burden in regard to all such matters.

■ The statute in question, 26 U.S.C. § 7212(b), makes it a crime to forcibly rescue " * * * any property after it shall have been seized under this title * * *." The essential elements required by the statute to consti-

tute the offense are seizure and rescue. One way for the Government to establish a lawful seizure is to show that the property was seized by a person authorized to do so by virtue of his office. See Cooper v. United States, 299 F. 483 (3rd Cir. 1924). The right of revenue officers of the Internal Revenue Service to make such a seizure without a warrant is not challenged. See 26 U.S.C. § 6331(a). The testimony of such officers here established that the seizure was made by them. Additionally, the jury was properly instructed regarding the Government's burden of proof.

■ The defendant's other contentions identified in the second preceding paragraph in effect attack the validity of the lien obtained by the Service. The necessary premise for defendant's assertions is that they are relevant factors in a trial where a defendant is charged with the criminal offense of rescuing property seized by the Service under the circumstances herein stated. We think the assumption is unwarranted. Such issues are relevant in civil proceedings attacking the Government's seizure. They are not relevant here. To permit such issues to be raised in connection with a prosecution under these statutes would be to encourage violent self-help where civil remedies are admittedly available. Compare United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1946). It is of passing interest that this defendant was aware of his civil remedies. Indeed he was successful in his application to obtain an injunction prohibiting the Service from opening the safe deposit box. His own actions apparently rendered that action moot. We thus find no error in refusing to instruct on such matters.

3. 1961 Session of the Pennsylvania General Assembly: Legislative Journal—Senate p. 1964. (June 5, 1961) (Remarks of Senator Donolow); Legislative Journal—House p. 3686–87 (August 23, 1961) (Remarks of Representative Eilberg).

4. Certainly had federal agents sought the search warrant here involved they would

not have been required to comply with the state statute in question. Indeed, its forty-eight hour notice requirement is inconsistent with the provision of Fed. Rules of Crim. Procedure 41(c) that the officer to whom it is directed shall make the search "forthwith."

Defendant's counsel also argues that the district court erred in refusing to permit him to inspect, for cross examination purposes, the entire statements given to Government agents prior to the trial by two of the Government's witnesses.

The record shows that after each Government witness who had given such a statement testified on direct examination, the prosecution made available to defense counsel that portion of each statement which it believed pertinent to the issues involved. When the defense counsel requested the missing portions of the statements, the trial judge, after conducting an in camera examination of the entire statements, denied the requests. Defendant argues that the determination of what portion of these statements was material to the cross examination should have been made by him after having been given an opportunity to examine the entire statements of both witnesses.

Before a defendant is entitled to the delivery of a statement under the so-called Jenks Act, 18 U.S.C. § 3500, the Government witness must have testified and the statement must relate to the subject mattter of the testimony. This is true even though the statements may relate to the subject matter of the indictment. See United States v. Butenko, 384 F.2d 554 (3rd Cir., Oct. 6, 1967). The ruling as to whether the requested statement relates to the testimony given by the witness is left to the determination of the trial judge after an " * * * inspection of the court in camera." 18 U.S.C. § 3500(c). This was the exact and proper procedure followed by the district court here.[5] Acceptance of defendant's argument would nullify the procedure adopted in the Jenks Act to meet conflicting policy factors.

Another ground of error asserted by defendant relates to the alleged failure of the Government to establish the requisite element of force necessary to "forcibly" rescue a safe deposit box. A similar failure is claimed with respect to a showing of an intent to "steal or purloin."

Forcible rescue, as that term is used in 26 U.S.C. § 7212(b), is not, in our opinion, limited to proof of force exerted against persons. Rather, we think the statute embraces the force here proved, viz., the breaking of the bank window, the removal of the Service's seal on the box and the removal of the safe deposit box and its contents from the bank.

On the "steal or purloin" issue, the defendant argues that since he owned the contents of the safe deposit box, he could not have had the requisite intent to steal or purloin his own property. In United States v. Sullivan, 333 F.2d 100, 116 (3rd Cir. 1964), this court said: "When validly invoked, [a levy] effects a seizure of the delinquent's property tantamount to a transferral of ownership." Thus, the Government as well as defendant had an interest in the property taken from the bank.

The judgment of the district court is affirmed.

FREEDMAN, Circuit Judge (dissenting).

For me this bizarre case presents the problem whether in a federal prosecution evidence may be used which was obtained by state officers in violation of a state statute which requires a court order to authorize access to a safe deposit box on appropriate notice to the owner, if he can be found.

The state officers did obtain a search warrant from a magistrate and I agree with the majority that the affidavit for it was based on probable cause. However, the government concedes that the police did not comply with the procedure prescribed by the Pennsylvania Act of September 20, 1961,[1] quoted in the majority opinion, for the search and seizure of the contents of the safe deposit box.

---

5. We have examined the withheld material and agree with the rulings of the district court.

1. P.L. 1532, Act No. 651, 19 Purdon's Pa. Stat. Annot. § 591.

Although the statute is poorly drawn and on its face might leave some doubt whether it was intended to be mandatory or directory, the legislative history makes it clear that it was designed as a mandatory prohibition against the search by police of a safe deposit box and the seizure of its contents except under authority of a judicial order on notice to the owner, if he could be found and if not, then on an order entered notwithstanding the want of notice.[2]

This is a federal trial, subject to our supervisory power over the administration of criminal justice and in my view a federal court should not permit the receipt in evidence of the fruits of a search of a safe deposit box effected by Philadelphia police officers in violation of the Pennsylvania statute.

The decisions in Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L. Ed.2d 1669 (1960) and Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L. Ed.2d 1688 (1960) could readily form the basis of elaborate discussion. I think it is enough simply to record my view that they are not decisive of the present question but leave it open for decision whether as a matter of policy the evidence should be excluded. I read them as dealing with state determinations whether the searches there involved were con-

stitutionally invalid and not as decisive of the question of policy which we have before us.

I see no reason why the policy of the state that there should be a special procedure for the protection of the privacy of safe deposit boxes should not be respected, especially by state officers, sworn to uphold the state's laws. To allow them to violate the statute and produce to a federal prosecutor the information thus obtained for use in a federal trial is to lend federal encouragement to the violation by state officers of the laws which control their conduct. It constitutes the unspoken expression by federal agencies of approval of the illegal acts of state officers, and its only foundation can be an acceptance of the view that the end justifies the means. It offends fundamentally the position expressed by Mr. Justice Brandeis in his famous dissent in Olmstead v. United States, 277 U.S. 438, 471, 483, 485, 48 S.Ct. 564, 72 L.Ed. 944 (1928) which so powerfully describes the evil inherent in the judicial use of the fruits of official illegality.[3] I would therefore hold that the evidence obtained by the search and seizure of the contents of the safe deposit box was erroneously admitted.

I therefore respectfully dissent.

---

2. Statement of Senator Donolow, Legislative Journal—Senate 1964, 1965 (1961); Statement of Rep. Eilberg, Legislative Journal—House 3687 (1961).

3. "When the Government, having full knowledge, sought, through the Department of Justice to avail itself of the fruits of these acts in order to accomplish its own ends, it assumed moral responsibility for the officers' crimes. * * * And if this Court would permit the Government, by means of its officers' crimes, to effect its purpose of punishing the defendants, there would seem to be present all the elements of a

ratification. If so, the Government itself would become a lawbreaker.
       \*       \*       \*       \*       \*
"In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously. Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. * * * To declare that in the administration of the criminal law the end justifies the means—to declare that the Government may commit crimes in order to secure the conviction of a private criminal—would bring terrible retribution. * * *"