UNITED STATES of America, Plaintiff-Appellant,

v.

Ted DUDEK, a/k/a Ted Landers, Defendant-Appellee.

No. 75–1547.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 2, 1975.

Decided Feb. 12, 1976.

Michael B. Michelson, Steven R. Olah, Sp. Atty., Organized Crime Strike Force, Crim. Div., U. S. Dept. of Justice, Cleveland, Ohio, Kenneth G. Spillias, Washington, D. C., for plaintiff-appellant.

Elmer A. Giuliani, Dempsey, Guiliani, Sperili, Hasenflue & Drost, Cleveland, Ohio, for defendant-appellee.

Before EDWARDS and ENGEL, Circuit Judges, and HARVEY,* District Judge.

EDWARDS, Circuit Judge.

In this case the government appeals from an order granting a motion to suppress evidence entered by the United States District Court in the Northern District of Ohio, Eastern Division.

Appellee was charged with transporting and receiving firearms and ammunition in interstate commerce without being licensed to do so, in violation of 18 U.S.C. § 922(a)(1) (1970). He was also charged with knowingly receiving and possessing said firearms being a felon, in violation of 18 U.S.C. App. § 1202(a)(1) (1970) and conspiracy to violate the laws above in violation of 18 U.S.C. § 371 (1970).

The motion to suppress evidence was made prior to trial on the basis of the fact that the search warrant issued by an Ohio state judge was not "promptly" returned after the search and that the inventory had not been properly "verified." In these respects appellee relies upon Ohio law, particularly Rule 41 of the Ohio Rules of Criminal Procedure.[1]

The language in Ohio Rule 41(D) which is particularly relevant to this appeal is as follows:[2]

> *(D) Execution and return with inventory.* The officer taking property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken, or shall leave the copy and receipt at the place from which the property was taken. The return shall be made promptly and shall be accompanied by a written inventory of any property taken. The inventory shall be made in the presence of the applicant for the warrant and the person from whose possession or premises the property was taken, if they are present, or in the presence of

---

* Honorable James Harvey, United States District Judge for the Eastern District of Michigan, Southern Division, sitting by designation.

1. The District Judge based his holding upon ORC §§ 2933.24 and 2933.241. Actually, as of the date of this search, these statutes had been supplanted by Ohio Rule of Criminal Procedure 41(D). Comparison shows, however, that the differences are minor and immaterial to our case.

2. This rule is an exact copy of Rule 41(d) Fed. R.Crim.P. except that the Ohio rule refers to Judge rather than Federal Magistrate.

at least one credible person other than the applicant for the warrant or the person from whose possession or premises the property was taken, and shall be verified by the officer. The judge shall upon request deliver a copy of the inventory to the person from whom or from whose premises the property was taken and to the applicant for the warrant. . . .

The government concedes in this case that the return of the warrant was not made "promptly" and that the inventory was not "verified" in accordance with the terms of the rule just quoted. The record discloses that the inventory was filled out at the plant where the seizures were made and in the presence of one of the partners in charge. It was not signed by the officer in charge or returned to the court which issued it for nearly eleven months. It was filed with the court two weeks before this trial. The defendant-appellee does not assert any prejudice from the late filing or the failure to verify.

The factual circumstances surrounding the failures referred to above are shown in the following colloquy between the District Judge and the officer in charge of the execution of the search warrant:

THE COURT: Now, so that I understand you, you came back and you said you tried to make the return to the Clerk's office when?

THE WITNESS: That afternoon.

THE COURT: On the 15th?

THE WITNESS: Yes, sir.

THE COURT: And they were closed?

THE WITNESS: Yes, sir.

\* \* \* \* \* \*

THE COURT: How long did you keep the warrants that had the inventories fastened to them?

THE WITNESS: About three or four days.

THE COURT: And you didn't make any further attempt to take them to the Clerk's office or take them to the Judge because you return them to the person who issued it?

THE WITNESS: Well, like I previously stated, your Honor, they were in the file and the file was taken to the Chief's office.

THE COURT: Well, now, for three or four days, you said, they were with you?

THE WITNESS: Yes, sir, they were.

THE COURT: And you did not take them anywhere?

THE WITNESS: No, sir, I didn't.

THE COURT: Anybody inform you of the statutes of Ohio that require that you make a return of the inventory in three days?

THE WITNESS: Yes, sir, I was aware that they had to be taken back, but it's just that at the time, what was going on and the work involved—I don't know what to say. It was oversight or—but we didn't have very much help with the inventory and we had people calling from all over, West Virginia, Pennsylvania, asking about it, and every call that came in either my partner or I had to take and clarify and bring people in, let them view the merchandise, take them to the Water Department to the basement or upstairs.

THE COURT: In other words, you were constantly dealing with his merchandise?

THE WITNESS: Yes, sir, we were, seven to ten days after the search.

THE COURT: When the file was taken from your office, was it taken from you personally?

THE WITNESS: I brought it down to the Chief's office.

THE COURT: He told you to bring it down?

THE WITNESS: Yes, sir.

THE COURT: Did you advise him a return had not been made yet?

THE WITNESS: No, sir, I did not your Honor.

The District Judge, apparently feeling that Ohio law controlled, held that appellee Dudek, as one of the owners of the business premises searched, had standing

to make the motion to suppress and suppressed the evidence.

Counsel for the government in its appeal argues that the inventory was complete, that the fact that it was not properly signed or filed did not prejudice defendant's interest in any way, that under federal law the return of the inventory provisions would be directory only and prejudice would have to be shown before suppression could be regarded as an appropriate remedy. The government, of course, argues that federal law controls.

Appellee argues vigorously that the state has a right to establish a higher standard in enforcing search procedures than the federal one if it wishes to do so. Appellee relies upon *State v. Bowland,* 29 Ohio Misc. 176, 281 N.E.2d 48 (1971), as being the only published Ohio authority directly in point, and asserts (accurately) that upon similar facts to these, the Toledo Municipal Court granted a motion to suppress evidence in the *Bowland* case.

This appeal then appears to present three possible questions:

I  Under Ohio law does the failure of state officers, executing a valid state search warrant, to file a timely return and a properly verified inventory require suppression of the fruits of the search, where defendant suffers no prejudice from such failure and the omission was inadvertent?

II  In a federal prosecution, if the search had been conducted by federal officers, would the failure to file a timely return and verified inventory, as required by Fed.R.Crim.P. 41(d), be grounds for exclusion of the fruits of the search, where defendant suffers no prejudice and the omission was inadvertent?

III  Assuming that the evidence in question would be suppressed in an Ohio prosecution, should the fruits of the state search nonetheless be admissible in a federal prosecution?

I

Research discloses that Ohio law on this topic is not limited to (or controlled by) *State v. Bowland, supra,* which was cited to the District Judge.

While we find no Ohio Supreme Court case dealing with our present issues, there is a recent (as yet unpublished) decision of the Court of Appeals of Franklin County, Ohio, *Ohio v. Moretti,* Nos. 73AP–440, 441, 442 (Ct.App. of Franklin County, Ohio, Apr. 9, 1974), *cert. denied,* 420 U.S. 928, 95 S.Ct. 1126, 43 L.Ed.2d 398 (1975), which holds that suppression of evidence is not called for where an officer failed to file an inventory. The carefully reasoned opinion of Judge Whiteside, citing previous unpublished Ohio Court of Appeals decisions, held:

Thus, the question is whether a failure of a police officer to file the inventory will vitiate an otherwise lawful search and seizure pursuant to a search warrant. There is no statutory, or constitutional, exclusionary rule requiring exclusion of evidence lawfully seized pursuant to a search warrant because of the failure of a police officer to file an inventory thereof. Nor do we think that such an exclusionary rule should be judicially imposed. To impose such an exclusionary rule would be an unwarranted extension of the exclusionary rule imposed for violations of the constitutional prohibition against unlawful searches and seizures.

In this instance, there is a lawful search and seizure, but the complaint is that there was a failure to comply with a subsequent related requirement which does not constitute part of the search and seizure but is to be performed only once the search and seizure is completed. We do not condone the failure of the police officer to perform his statutory duty. However, there is no reason to penalize the public because of the failure of a police officer to perform this type of duty. There is no prejudice to the defendant that is inherent in the failure of the officer to file an inventory. Unlike the case of an unlawful search and seizure in violation of constitutional safeguards, the failure of an officer to file an inventory does not violate any fundamental rights of the defendants.

The failure of the officer to file an inventory may give rise to problems concerning admissibility of evidence if a question arises as to the identity of the property seized pursuant to a search warrant, but a per se exclusionary rule is neither required nor warranted. The purpose of the per se exclusionary rule imposed, with respect to illegally obtained evidence, is to discourage the obtaining of evidence by unlawful means. The old rule permitting illegally obtained evidence to be used against a defendant at trial has been described as placing "a judicial stamp of approval on the use of unlawful means to justify an end result." See dissenting opinion of Justice Herbert in *State v. Mapp* (1960), 170 Ohio St. 427, 438 [166 N.E.2d 387].

Here, there is no unlawfully obtained evidence. The evidence was lawfully obtained, and the question is whether the state should be denied the use of such lawfully obtained evidence because of the failure of a police officer to comply with a statutory requirement in connection with the identification and preservation of such lawfully obtained evidence. No reason for imposing such a per se exclusionary rule has been advanced. Most of the cases refuse to do so, and we do likewise.

## II

The issue with which we are currently concerned has been answered in similar fashion by this court and other Courts of Appeals in the context of federally authorized searches and federal prosecutions. Clearly, failure to follow the requirements of Rule 41 of the Federal Rules of Criminal Procedure pertaining to inventory of objects seized and a prompt return to the court has been held not to require invalidation of an otherwise properly issued and executed search warrant or the suppression of evidence acquired under it. The Sixth Circuit cases include: *United States v. Moore,* 452 F.2d 569, 572–73 (6th Cir. 1971), *cert. denied,* 407, U.S. 910, 92 S.Ct. 2435, 32 L.Ed.2d 684 (1972); *United States v. Haskins,* 345 F.2d 111, 117 (6th Cir. 1965); *Evans v. United States,* 242 F.2d 534, 536 (6th Cir.), *cert. denied,* 353 U.S. 976, 77 S.Ct. 1059, 1 L.Ed.2d 1137 (1957); *Rose v. United States,* 274 F. 245, 250–51 (6th Cir.), *cert. denied,* 257 U.S. 655, 42 S.Ct. 97, 66 L.Ed. 419 (1921).

Cases close in point in other circuits include: *United States v. Burke,* 517 F.2d 377 (2d Cir. 1975); *United States v. Hall,* 505 F.2d 961 (3d Cir. 1974); *United States v. Sellers,* 483 F.2d 37 (5th Cir. 1973), *cert. denied,* 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974); *United States v. Wilson,* 451 F.2d 209 (5th Cir. 1971), *cert. denied sub nom. Fairman v. United States,* 405 U.S. 1032, 92 S.Ct. 1298, 31 L.Ed.2d 490 (1972); *United States v. Kennedy,* 457 F.2d 63 (10th Cir.), *cert. denied,* 409 U.S. 864, 93 S.Ct. 157, 34 L.Ed.2d 112 (1972). *Cf. Murby v. United States,* 293 F. 849 (1st Cir. 1923).

In the *Rose* case this circuit said:

The second objection is equally without merit. The failure of the officer to whom a search warrant is directed to make a return thereof cannot invalidate the search or seizure made by authority of such warrant. If the officer neglects to do this, he can be required to make return of the writ at any later time, or if the person whose premises were searched or whose property was seized is injured in any way by the failure to make this return, the officer failing to make such return is liable to him in damages. The making of the return is merely a ministerial act, to be performed after the warrant is executed. *Rose v. United States, supra* at 250–51.

In the *Burke* case the Second Circuit said:

On the other hand, the mere fact that property seized pursuant to the warrant of a state judge at the request of state law enforcement officers for violation of state law is offered in a federal prosecution does not implicate the requirements of the Rule; in such cases it is sufficient if the warrant meets the requirements of the Fourth Amendment. See *United States v. Bowling,* 351 F.2d 236 (6 Cir.

1965), cert. denied, 383 U.S. 908, 86 S.Ct. 888, 15 L.Ed.2d 663 (1966); *Gillespie v. United States*, 368 F.2d 1, 4 (8 Cir. 1968); *United States v. Scolnick*, 392 F.2d 320, 323 (3 Cir.), cert. denied sub nom. *Brooks v. United States*, 392 U.S. 931, 88 S.Ct. 2283, 20 L.Ed.2d 1389 (1968) (even when state law had been violated since *"[t]he test is one of federal law*, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed," quoting *Elkins v. United States*, 364 U.S. 206, 224, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960)); *United States v. Coronna*, 420 F.2d 1091 (5 Cir. 1970). *United States v. Burke, supra* at 382. (Footnote omitted.)

### III

This leads then directly to consideration of whether the fruits of the state search in this case should be admitted in a federal prosecution, even if the Ohio Supreme Court (which has not passed on the question) were to hold the evidence inadmissible under state law.

■ We have no doubt that in a federal criminal prosecution federal standards are applied to determine the admissibility of evidence. *Wofle v. United States*, 291 U.S. 7, 54 S.Ct. 279, 78 L.Ed. 617 (1934); *United States v. Turner*, 497 F.2d 406 (10th Cir. 1974); *United States v. Woodall*, 438 F.2d 1317 (5th Cir. 1970), cert. denied, 403 U.S. 933, 91 S.Ct. 2262, 29 L.Ed.2d 712 (1971); Fed.R.Crim.P. 26.

■ This does not, however, end the matter. For in many instances federal courts look to state law in the course of the federal determination of admissibility. *Eq., Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); *United States v. DiRe*, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); *United States v. Rizzo*, 491 F.2d 215 (2d Cir.), cert. denied, 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 769 (1974); *United States v. Manfredi*, 488 F.2d 588 (2d Cir. 1973), cert. denied, 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974); *Reed v. United States*, 401 F.2d 756 (8th Cir., 1968), cert. denied, 394 U.S. 1021, 89 S.Ct. 1637, 23

L.Ed.2d 48 (1969); *Meyer v. United States*, 386 F.2d 715 (9th Cir. 1967); *United States v. Luster*, 342 F.2d 763 (6th Cir.), cert. denied, 382 U.S. 819, 86 S.Ct. 45, 15 L.Ed.2d 66 (1965); *Lupo v. Fay*, 332 F.2d 1020 (2d Cir. 1964), cert. denied, 379 U.S. 983, 85 S.Ct. 693, 13 L.Ed.2d 573 (1965). *See* Fed.R.Civ.P. 43(a) (which controlled admission of evidence in civil trials at the time of the ruling below).

Bearing on our problem are important statements from several leading United States Supreme Court opinions.

In the *Elkins* case Justice Stewart said:

In determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out. The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed. *Elkins v. United States*, 364 U.S. 206, 223–24, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960).

In the *Rios* case Justice Stewart said:

Moreover, the Court of Appeals gave no consideration to the question of the legality of the state search and seizure, relying as it did upon the silver platter doctrine and rejecting the petitioner's contention that the state court's determination of illegality precluded the federal trial court from making an independent inquiry into the matter.

With the case in such a posture, we have concluded that the interests of justice will best be served by remanding the case to the District Court. There, free from the entanglement of others issues that have now become irrelevant, the lawfulness of the policemen's conduct can be determined in accord with the basic principles governing the validity of searches and seizures by federal officers under the Fourth Amendment. *Rios v. United*

*States*, 364 U.S. 253, 260–61, 80 S.Ct. 1431, 1436, 4 L.Ed.2d 1688 (1960).

In the *Preston* case Justice Black said:

The question whether evidence obtained by state officers and used against a defendant in a federal trial was obtained by unreasonable search and seizure is to be judged as if the search and seizure had been made by federal officers. *Elkins v. United States*, 364 U.S. 206 [80 S.Ct. 1437, 4 L.Ed.2d 1669] (1960). *Preston v. United States*, 376 U.S. 364, 366, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964).

In the *Cady* case Justice Rehnquist said:

The seizures of the sock and the floor mat occurred while a valid warrant was outstanding, and thus could not be considered unconstitutional under the theory advanced below. As these items were constitutionally seized, we do not deem it constitutionally significant that they were not listed in the return of the warrant. The ramification of that "defect," if such it was, is purely a question of state law. *Cady v. Dombrowski*, 413 U.S. 433, 449, 93 S.Ct. 2523, 2532, 37 L.Ed.2d 706 (1973).

■ We recognize that two of these statements (those in *Elkins* and *Preston* ) were made in the context of a more restrictive federal standard of admissibility than that of the state concerned and hence may be regarded as dicta. In *Rios* and *Cady*, however, the federal standard was held to prevail as opposed to a possibly more restrictive state standard. Taken together these four statements represent an impressive argument for the proposition that evidence seized in actual or (as here possible) violation of state law may nonetheless be admitted in a federal prosecution where the violation concerned would not be such as to require suppression of evidence under federal constitutional law, or federal statutory or case law.

Two opinions from Courts of Appeals merit quotation in this context. In the *Scolnick* case the Third Circuit said:

The Government concedes that the Philadelphia Police did not comply

with the Pennsylvania Act. However, it argues that the statute did not vitiate the search. We shall assume that, as a matter of Pennsylvania law, the statute was applicable to the request for the search warrant here involved. We shall further assume that the warrant was illegal as a matter of Pennsylvania law. We make the assumptions because the nature of the assumed violations of Pennsylvania law are such that they are not cognizable in a federal criminal proceeding. We base our conclusion on the application of the teaching of *Elkins v. United States*, supra, to our facts. *United States v. Scolnick*, 392 F.2d 320, 325 (3d Cir.), *cert. denied sub nom., Brooks v. United States*, 392 U.S. 931, 88 S.Ct. 2283, 20 L.Ed.2d 1389 (1968).

The Court then quoted *Elkins, supra*, and cited *Rios, supra*, and *Preston, supra*, and continued:

These Supreme Court cases show that the fact that evidence is illegally obtained exclusively by state officers does not automatically preclude its use in federal criminal trials. This is made abundantly clear from the facts in *Rios v. United States*, above. There the state court had found the evidence to have been illegally obtained as a matter of state law. However, the Supreme Court did not decide that it was thereby rendered inadmissible in the federal trial. Rather, it remanded the case for an evaluation of the evidence by Fourth Amendment standards. Had the Supreme Court felt that an established illegality under state law was sufficient to preclude its use in the federal courts there would have been no need to remand for a hearing. *United States v. Scolnick, supra* at 325.

. In the *Burke* case, from which we have already quoted, Judge Friendly suggested additional considerations over and above the federal constitutional standard emphasized by the *Scolnick* court:

In *United States v. Dunnings*, 425 F.2d 836, 840 (2 Cir. 1969), cert. denied, 397 U.S. 1002, 90 S.Ct. 1149, 25 L.Ed.2d

412 (1970), we characterized the exclusionary rule, as applied in Fourth Amendment cases, as being "a blunt instrument, conferring an altogether disproportionate reward not so much in the interest of the defendant as in that of society at large." For that reason courts should be wary in extending the exclusionary rule in search and seizure cases to violations which are not of constitutional magnitude. Without assuming to make a definitive formulation, we think that . . . violations of Rule 41 alone should not lead to exclusion unless (1) there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule. *United States v. Burke*, 517 F.2d 377, 386–87 (2d Cir. 1975). (Footnotes omitted.)

Returning then to the facts of our instant appeal, we hold that the failure to make a prompt return and to verify the inventory in this case have no relation at all to the command of the Fourth Amendment which bars unreasonable searches and seizures. Both of these failures to comply with Ohio's Rule 41 pertain to requirements of that rule which came into play *after* the search and seizure was completed. The requirement of verification of the inventory of items seized is doubtless designed to allow for proper identification of property taken by the police under the warrant and to protect the owner's rights therein. The requirement of prompt return serves, among other purposes, to make sure that the warrant and its affidavit are available to counsel for inspection in preparation for trial.

We note, as appellee urges us to, that the language of Ohio's Rule 41 (like that of the federal counterpart) is mandatory. And we entertain no doubt that it was meant to be followed. There are, however, many possible methods of vindicating the inventory and return sections of the rule other than suppression of the lawfully seized evidence. Possible remedies might include a judicial writ to compel performance of the neglected acts. Additionally, a trial court might grant an adjournment to counsel who, because of delay in filing the return, had been deprived of opportunity to inspect the affidavit and search warrant. And if there were a dispute over whether an item tendered as evidence had actually been seized on the premises concerned as authorized by the warrant, failure to verify the inventory might justify the trial court in indulging a presumption unfavorable to the government. We do not need to decide these matters or to carry this speculation further, for no contentions of prejudice to appellee are presented by this record.

We hold that nonconstitutional, nonprejudicial and inadvertent failures to follow the *post*-search and seizure requirements of Ohio's rule which are involved here do not require application of the federal exclusionary rule. *Rios, supra*; *Cady, supra*; *Scolnick, supra*; *Burke, supra*.

The order of the District Court suppressing evidence is vacated and the case is remanded for further proceedings.