UNITED STATES of America, Appellant,

v.

William D. TURNER, Appellee.

No. 724, Docket 76–1518.

United States Court of Appeals, Second Circuit.

Argued Feb. 8, 1977.

Decided June 2, 1977.

**48**

Harold James Pickerstein, Chief Asst. U. S. Atty., New Haven, Conn. (Peter C. Dorsey, U. S. Atty., D. Conn., New Haven, Conn., of counsel), for appellant.

Jeremiah F. Donovan, Law Student Intern, Yale University, New Haven, Conn., for appellant.

Robert G. Oliver, New Haven, Conn., for appellee.

Before FEINBERG, GURFEIN and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

The United States appeals, pursuant to 18 U.S.C. § 3731, from a decision of the United States District Court for the District of Connecticut, Robert C. Zampano, Judge, suppressing the fruits of a search of the appellee's residence. We hold that suppression was unwarranted and remand the case for further proceedings.

The indictment in this case charges appellee, William D. Turner, with two counts of introducing amygdalin purissimum into commerce by means of a false invoice, 18 U.S.C. § 542, and with one count of conspiracy to commit that offense, 18 U.S.C. § 371. Amygdalin, sometimes called laetrile, and popularly known as vitamin B–17, is claimed by some to be a cancer cure, although its manufacture, distribution and importation in this country has not been approved by the Food and Drug Administration. Venue was laid in the District of Connecticut because the amygdalin arrived in this country at Connecticut's Bradley International Airport.

On June 11, 1974, Turner was arrested in California, by California authorities, for violating § 1707.1 of the California Health and Safety Code, which prohibits the distribution of unapproved substances intended for cancer treatment. While he was in custody, state and federal authorities—anxious about the possibility that he would soon be released on bail—obtained a warrant for the search of his residence in Chula Vista, California. The issues raised on this appeal relate to the legality of the procedures followed in obtaining the warrant.

At approximately 9:00 p. m. on June 11, 1976, Judge Kenneth Johns of the San Diego Municipal Court was telephoned at home and asked to issue a search warrant. A conference telephone call was set up with Judge Johns, Charles Bell, a Deputy District Attorney with the San Diego County District Attorney's Office, Seth Nadel, a Special Agent with the United States Customs Service, and Sharon Dalton, a Special Operative of the California Health Department. Bell, Nadel and Dalton were all at the Chula Vista Police Station. The telephone call was recorded, and a transcript of the call is a part of the record.

Judge Johns placed Nadel and Dalton under oath, and they were questioned by Bell with respect to the search warrant application. Dalton testified, in substance, that she had bought a brown paper bag full of vitamin B–17 from Turner. Nadel testified, in substance, that he had maintained surveillance on Turner's residence, and the brown paper bag given to Dalton had come from there.

Judge Johns then told Nadel to fill in the blanks in a search warrant form and to sign the Judge's name. Nadel was also instructed to sign his own name, department and badge number.

Pursuant to this search warrant, Turner's residence was searched by local police, sheriff's deputies, Customs agents and Dalton. Numerous items were seized—some of which are evidence of the instant charges. The return of the search warrant, along with the inventory of items seized, was made by a Chula Vista police officer on June 12. It was sworn to before Judge

Johns on June 14. On June 19, Judge Johns certified that he had filed, in San Diego Municipal Court, a tape recording of the telephonic search warrant application, a transcript of that conversation, the "original" of the search warrant (signed by him a day or two after the search) and a "duplicate original" of the search warrant (the copy signed by Nadel on the Judge's behalf).

With one exception, the procedures followed in this case complied with the requirements of a California statute authorizing oral search warrants. California Penal Code §§ 1526(b), 1528(b).[1] It is agreed that the statute was violated as a result of Agent Nadel's signing of the duplicate original warrant. Under the California statute, only a "peace officer" can perform this task, and a federal Customs agent is not a "peace officer" under California law. The district court held that the California courts would require strict compliance with the statutory procedures and would grant suppression on the basis of the violation in question here. Accordingly, the district court granted Turner's motion to suppress.

## I.

■ At the outset we must determine what standards to apply in deciding the motion to suppress. The search warrant was issued by a state judge, acting under authority of state law, as a result of violations of the state penal code, at the request of state law enforcement personnel. Nevertheless, a violation of the state telephonic search warrant procedures, even if such a violation would result in suppression in the California courts, as the district court predicted, would not necessarily require suppression in federal court. This is a federal prosecution, and federal law determines whether suppression is appropriate. *United States v. Magda*, 547 F.2d 756, 757 n. 2 (2d Cir. 1976); *United States v. Castillo*, 449 F.2d 1300, 1301 n. 2 (5th Cir.

1971); *United States v. Scolnick*, 392 F.2d 320, 325 (3d Cir.), *cert. denied*, 392 U.S. 931, 88 S.Ct. 2283, 20 L.Ed.2d 1389 (1968); *see Cady v. Dombrowski*, 413 U.S. 433, 449, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *Preston v. United States*, 376 U.S. 364, 366, 84 S.Ct. 881, 11 L.Ed.2d 777(1964); *Rios v. United States*, 364 U.S. 253, 260–61, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960); *Elkins v. United States*, 364 U.S. 206, 224, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); *On Lee v. United States*, 343 U.S. 747, 754–55, 72 S.Ct. 967, 96 L.Ed. 1270 (1952); *Olmstead v. United States*, 277 U.S. 438, 468, 48 S.Ct. 564, 72 L.Ed. 944 (1928); *United States v. Mejias*, 552 F.2d 435, 444 (2d Cir. 1977); *United States v. Dudek*, 530 F.2d 684, 691 (6th Cir. 1976); *United States v. Burke*, 517 F.2d 377, 382 (2d Cir. 1975). Because Customs Agent Nadel was involved in the warrant application process, and because Customs Agents participated in the search of Turner's residence, this search was federal in the sense that federal officers "had a hand in it." *Lustig v. United States*, 338 U.S. 74, 78, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949) (Frankfurter, J.); *see United States v. Hanson*, 469 F.2d 1375 (5th Cir. 1972); *Navarro v. United States*, 400 F.2d 315 (5th Cir. 1968). Accordingly, it must be considered in light of both Fed.R.Crim.P. 41 and the Fourth Amendment. If there is a violation of Rule 41, such a violation will

> not lead to exclusion unless (1) there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule.

*United States v. Burke, supra*, 517 F.2d at 386–87 (footnotes omitted).

## II.

■ Turner's first constitutional argument is that the warrant was not issued by

---

1. Arizona appears to be the only other jurisdiction which authorizes telephonic search warrant procedures. Ariz.Rev.Stat. §§ 13 -1444(C), 13–1445(C). *See generally* Israel, Legislative Regulation of Searches and Seizures: The

Michigan Proposals, 73 Mich.L.Rev. 221, 258–63 (1974); Comment, Oral Search Warrants: A New Standard of Warrant Availability, 21 U.C. L.A.L.Rev. 691 (1973).

a neutral and detached magistrate as required by the Fourth Amendment. This argument misconceives the nature of the constitutional requirement in question. The Fourth Amendment requires that the determination of probable cause—the judgmental function of drawing inferences from evidence and deciding whether probable cause exists—be made by a neutral and detached magistrate. *Gerstein v. Pugh*, 420 U.S. 103, 118, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Shadwick v. City of Tampa*, 407 U.S. 345, 351–52, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972); *Coolidge v. New Hampshire*, 403 U.S. 443, 449, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), *quoting Johnson v. United States*, 333 U.S. 10, 13–14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). That requirement was clearly satisfied here. Judge Johns was a neutral and detached magistrate who was informed of the facts. On the basis of what he was told he determined that probable cause existed to search Turner's residence. The cases cited above have nothing to do with the question of who is authorized to sign the magistrate's name to the warrant after his determination has been made. We hold that nothing in the Fourth Amendment prevented the magistrate from delegating that purely ministerial task to Customs Agent Nadel. As long as the magistrate in fact performs the substantive tasks of determining probable cause and authorizing the issuance of the warrant, the amendment is satisfied.

Turner's second constitutional argument is that the warrant was not "supported by Oath or affirmation" as required by the Fourth Amendment. His theory is that long distance swearing is not permissible, because at common law the witness and the taker of an oath were required to be in each other's physical presence. Since telephonic oaths were unknown to the law at the time of the ratification of the Bill of Rights, it is argued, they cannot be constitutional now. We disagree. In the one hundred years since Alexander Graham Bell invented the telephone, Long Distance has truly become, in the words of the well-known advertisement, "the next best thing to being there." The Fourth Amendment is sufficiently flexible to account for such technological advances. *See Olmstead v. United States*, 277 U.S. 438, 472–79, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting) (wiretapping); *cf. Katz v. United States*, 389 U.S. 347, 352, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (same); *Berger v. New York*, 388 U.S. 41, 50–53, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967) (same); *Lopez v. United States*, 370 F.2d 8 (5th Cir. 1966) (information relayed via police radio).

■ An "Oath or affirmation" is a formal assertion of, or attestation to, the truth of what has been, or is to be, said. It is designed to ensure that the truth will be told by insuring that the witness or affiant will be impressed with the solemnity and importance of his words. The theory is that those who have been impressed with the moral, religious or legal significance of formally undertaking to tell the truth are more likely to do so than those who have not made such an undertaking or been so impressed. *See Frazier v. Roberts*, 441 F.2d 1224, 1228 (8th Cir. 1971); *cf.* Fed.R.Evid. 603; McCormick on Evidence § 245, at 582 (2d ed. 1972). We cannot accept Turner's argument that for constitutional purposes an oath or affirmation is invalid merely because it is taken over the telephone. The moral, religious and legal significance of the undertaking remains the same whether the oath taker and the witness communicate face-to-face or over the telephone.

■ In a ritualistic sense, it may be that an oath taken over the telephone appears less formal or less solemn than one taken in the physical presence of the oath taker. The constitutionality of oaths does not depend, however, on such purely ritualistic considerations. In every meaningful sense, Nadel and Dalton were under oath. We hold that search warrant application procedures can constitutionally be brought into line with twentieth century technology.

There is no suggestion in this case that the use of the telephone was designed to hide the identity of the affiants, *see United States ex rel. Pugh v. Pate*, 401 F.2d 6 (7th Cir. 1968), *cert. denied*, 394 U.S. 999, 89

S.Ct. 1590, 22 L.Ed.2d 777 (1969), or that the Fourth Amendment "Oath or affirmation" requirement was "cavalierly brushed aside as an empty formality," *see Dow v. Baird*, 389 F.2d 882, 884 (10th Cir. 1968). Moreover, there is no question here of what information was brought to the Judge's attention, *Aguilar v. Texas*, 378 U.S. 108, 109 n. 1, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), because the telephone conversation was recorded and transcribed, as required by Fed. R.Crim.P. 41(c) and Cal.Penal Code § 1526(b). Recording and transcription is undoubtedly a wise practice, but it may not be constitutionally required—a question we do not reach. *See Campbell v. Minnesota*, 487 F.2d 1, 5 (8th Cir. 1973); *United States ex rel. Gaugler v. Brierley*, 477 F.2d 516 (3d Cir. 1973).

### III.

The alleged violations of Fed.R.Crim.P. 41 are similar to the alleged violations of the Fourth Amendment. Turner claims that the warrant was not "issued" by Judge Johns as required by the rule. The argument is that *issuance* cannot occur without the issuing magistrate actually affixing his *signature* to the warrant. Because Customs Agent Nadel signed on behalf of Judge Johns, it is argued, Judge Johns did not sign the warrant, and, accordingly, he did not issue it. Turner also claims that the warrant was defective because it did not issue on the basis of either "an affidavit or affidavits sworn to before the . . . state judge," or oral testimony given by the affiant "personally." Fed.R.Crim.P. 41(c).

Rule 41 was intended simply to be a codification of the law and practice prior to its adoption. Advisory Committee Note on Rule 41 of the Federal Rules of Criminal Procedure, 4 F.R.D. 428 (1946). Telephonic search warrants were not a part of prior practice. It was not until April 26, 1976, that the Supreme Court transmitted to Congress an amendment to Rule 41(c) which would authorize telephonic search warrants.[2] While the government has ad-

---

**2.** The amended rule and an extensive Advisory Committee's Note are published in Rules of Procedure, Communication from The Chief Justice of the United States Transmitting Amendments to the Federal Rules of Criminal Procedure, Etc., H.R.Doc.No. 464, 94th Cong., 2d Sess. 19–26 (1976). The amended rule alone is reprinted in 96 S.Ct., Adv. Sheet No. 15, at 4–5 (1976). The amended version of Rule 41(c) provides, in full, as follows:

   *Rule 41. Search and seizure*
   \* \* \* \* \* \*
   (c) *Issuance and Contents.*
   (1) *Warrant Upon Affidavit.* A warrant shall issue only on an affidavit or affidavits sworn to before the federal magistrate or state judge and establishing the grounds for issuing the warrant. If the federal magistrate or state judge is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, he shall issue a warrant identifying the property and naming or describing the person or place to be searched. The finding of probable cause may be based upon hearsay evidence in whole or in part. Before ruling on a request for a warrant the federal magistrate or state judge may require the affiant to appear personally and may examine under oath the affiant and any witnesses he may produce, provided that such proceeding shall be taken down by a court reporter or recording equipment and made part of the affidavit. The warrant shall be directed to a civil officer of the United States authorized to enforce or assist in enforcing any law thereof or to a person so authorized by the President of the United States. It shall command the officer to search, within a specified period of time not to exceed 10 days, the person or place named for the property specified. The warrant shall be served in the daytime, unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime. It shall designate a federal magistrate to whom it shall be returned.

   (2) *Warrant Upon Oral Testimony.* When the circumstances make it reasonable to do so in the absence of a written affidavit, a search warrant may be issued upon sworn oral testimony of a person who is not in the physical presence of a federal magistrate provided the federal magistrate is satisfied that probable cause exists for the issuance of the warrant. The sworn oral testimony may be communicated to the magistrate by telephone or other appropriate means and shall be recorded and transcribed. After transcription the statement must be certified by the magistrate and filed with the court. This statement shall be deemed to be an affidavit for purposes of this rule.

   (A) *Method of Issuance.* The grounds for issuance and the contents of the warrant shall be those required by subdivision (c)(1) of this rule. Prior to approval of the war-

vanced forceful arguments to the effect that the procedures followed here did comport with the literal requirements of Rule 41, we do not believe it would be fruitful to examine those arguments in depth because the amended version of Rule 41(c) is not yet in effect. Act of July 8, 1976, Pub.L.No. 94–349, 90 Stat. 822 (1976) (postponing effective date from August 1, 1976, to August 1, 1977). Instead we will assume that the Rule was violated in the manner complained of, and we will consider whether the violations are of such a nature as to require suppression.

We have already held, in Part II of this opinion, that the telephonic search warrant procedures followed here involved no violations of constitutional magnitude. Accordingly, we must be "wary in extending the exclusionary rule in search and seizure cases to violations" of Rule 41 alone. *United States v. Burke*, 517 F.2d 377, 386 (2d Cir. 1975).

■ In this Circuit, an "intentional and deliberate disregard of a provision in the Rule," *id.* at 387 (footnote omitted), will justify suppression. Here, however, the search warrant application was made by state law enforcement personnel who made a good faith effort to comply with state procedural requirements, and who gave no thought to compliance with the federal Rule. There is no suggestion that the federal officers, whose involvement was relatively minor, sought to use the state procedures in order to evade the provisions of Rule 41. Exclusion under such circumstances could have no deterrent effect and would not "tend to enforce decent police practices." *Id.* at 386 n. 12. Accordingly,

this ground for suppression is inapplicable on the facts of this case. ·

■ A showing of prejudice will also justify suppression. *Id.* at 386–87. Such a showing is a prerequisite for exclusion in at least four of the circuits that have considered the issue. *United States v. Dauphinee*, 538 F.2d 1, 3 (1st Cir. 1976); *United States v. Hall*, 505 F.2d 961, 964 (3d Cir. 1974); *United States v. Kennedy*, 457 F.2d 63, 67 (10th Cir.), *cert. denied*, 409 U.S. 864, 93 S.Ct. 157, 34 L.Ed.2d 112 (1972); *United States v. McKenzie*, 446 F.2d 949, 954 (6th Cir. 1971). "Prejudice" in this context consists of being subjected to a search that "[1] might not have occurred or [2] would not have been so abrasive if the Rule had been followed." *United States v. Burke, supra*, 517 F.2d at 387 (footnote omitted).

■ It cannot be seriously maintained that this search would not have occurred if Rule 41 had not been violated. If the warrant had been presented to Judge Johns personally, he would have signed it. The only reason he authorized an agent to sign it was because he and the warrant were not in the same place, so it was not physically possible for him to perform that task himself. It is likewise clear that it would have made no difference to Judge Johns whether the facts which went to make up probable cause were supplied over the telephone or by means of an affidavit. Thus, the first type of prejudice is not present.

Turner's residence was searched at night when he was not at home. The nighttime search was specifically approved by Judge Johns. Regardless of whether the judge had signed the warrant in person, rather than through an agent, or whether the law

---

*rant, the magistrate shall require the federal law enforcement officer or the attorney for the government who is requesting the warrant to read to him, verbatim, the contents of the warrant. The magistrate may direct that specific modifications be made in the warrant. Upon approval, the magistrate shall direct the federal law enforcement officer or the attorney for the government who is requesting the warrant to sign the magistrate's name on the warrant. This warrant shall be called a duplicate original warrant and shall be deemed a warrant for purposes of this*

*rule. In such cases, the magistrate shall cause to be made an original warrant. The magistrate shall enter the exact time of issuance of the duplicate original warrant on the face of the original warrant.*

*(B) Return. Return of the duplicate original warrant and the original warrant shall be in conformity with subdivision (d) of this rule. Upon return, the magistrate shall require the person who gave the sworn oral testimony establishing the grounds for issuance of the warrant, to sign a copy of it.*

enforcement authorities had used affidavits, rather than the telephone, the search would still have been conducted at night, and Turner would not have been present. It cannot be convincingly argued that the search "would not have been so abrasive if the Rule had been followed." *United States v. Burke, supra,* 517 F.2d at 387 (footnote omitted). Accordingly, the second type of prejudice is not present.

Finally, Turner was not deprived of any substantial procedural safeguard provided for in Rule 41. The facts relied on to make up probable cause have been preserved both on tape and in written form, and they were supplied by witnesses whose identities are known and who were under oath. The determination of probable cause was made prior to the search by a neutral and detached magistrate whose identity appears on the face of the warrant.

### IV.

After Turner's suppression motion was filed, it apparently was stipulated between defense counsel and the government that three threshold legal issues—not requiring an evidentiary hearing—would be litigated first, and that determination of other issues would await the resolution of the threshold issues. Because those issues have now been resolved in the government's favor, a remand for further proceedings is necessary.

Turner argues that the question of whether there was "prejudice" within the meaning of *Burke* has not yet been adequately explored because no hearing has been held. If it becomes necessary to reach the issue, as it has, he asks that we remand for a hearing to explore it.

This problem arose in a somewhat different context in the *Burke* case. There, this Court was reviewing a final judgment after a plea of guilty. The district court had denied suppression without conducting a hearing. This Court explained:

> While it might have been better if the district court had offered to allow Burke to go into these matters at a hearing, counsel has made no claim that he could offer evidence that would bring the case

within our formulation of circumstances making it appropriate to apply the exclusionary rule to the infractions of Rule 41 here at issue. We see no purpose in remanding for a hearing when counsel has made no showing of reason to think that, under our view of the law, any purpose would be served thereby.

*United States v. Burke, supra,* 517 F.2d at 387 (footnote omitted). Because of the nature of the *Burke* formulation, it will ordinarily be unnecessary to conduct a hearing on the issue of prejudice. In the case at bar we believe the issue can be resolved without a hearing, and, like the *Burke* Court, we have done so. Nevertheless, if counsel can show that it would serve some purpose to explore the question at a hearing, he should be allowed to do so. While no such showing has yet been made in this case, counsel may be able to make one. Because the case must be remanded, we feel it is appropriate to leave to the sound discretion of the trial judge the question of whether further inquiry into the question of prejudice is necessary.

Reversed and remanded for further proceedings in accordance with this opinion.